BRUCE *vs.* THE PRESIDENT &c. OF THE DELAWARE AND
HUDSON CANAL COMPANY.

The Delaware and Hudson Canal Company were incorporated for the purpose of
cutting a canal and making a complete slack water navigation, between the
Delaware and Hudson rivers, and by their charter they were authorized to
make, construct and forever maintain, a canal of *suitable* width, depth and
dimensions, *to be determined by the corporation;* also all necessary locks,
aqueducts, culverts, dams, waste-weirs &c.; the object of the charter being,
as stated in the preamble, the opening of a channel through which the city of
New York and other parts of the state might receive a supply of stone coal
from Pennsylvania. *Held* that, under their charter, the company, after having
constructed their canal, had the power to *enlarge* the same, whenever in its judg-
ment the increased demand for the article the canal was to supply, required
such enlargement.
*Held also,* that having the authority to make such enlargement, the company
had the legal right to raise, by means of a dam, the water of the Rondout
creek, so as to make that portion of it used by them as a part of their canal
navigable for their boats of the enlarged size; and that the only remedy of a
mill owner upon that creek, for an injury sustained in consequence of the
raising of the water, was by an action for damages, or by proceedings under
the 10th section of the company's charter, for the appraisal and payment of
the damages; and not by obtaining an injunction to restrain the act.
It is not every case even of a clear violation of the plaintiff's rights, that entitles
him to an injunction to restrain such violation. He must first show clearly
that the act itself is illegal.
If an act is authorized by law, the remedy of a party injured is by an action for
damages, or such other proceedings as may be prescribed by statute for the
ascertainment and payment of the damage.
To authorize a temporary injunction, it must appear from the complaint that the
act sought to be restrained is unlawful, and that, to allow such act to be
committed or continued, during the litigation, would produce injury to the
plaintiff.
The provisions of the 219th section of the code are *permissive,* not imperative.
A temporary injunction should not be allowed in every case in which a plaintiff
brings himself within the letter of that section.
Some regard should be had to the nature and extent of the injury which the
plaintiff would suffer if the injunction should be withheld, and also to the con-
sequences to the defendant if it be granted.

MOTION to dissolve an injunction. The defendants were
incorporated in 1823 " for the purpose of cutting a canal
and making a complete slack water navigation, between the

Delaware and Hudson rivers." By their charter, they were authorized " to make, construct and forever maintain, a canal or slack water navigation of suitable width, depth and dimensions, to be determined by the corporation," also " all necessary locks, aqueducts, culverts, dams, waste weirs," &c.

Under this charter, the defendants proceeded to construct their canal. For that purpose, a section of about three miles of the Rondout creek, between Eddyville and creek locks, was used by the defendants. The canal was put in operation in 1829, and from that time until the commencement of this action, the defendants had been accustomed, during the dry season of the year, to raise the water in the Rondout creek by means of flush boards placed upon a dam at Eddyville, for the purpose of deepening the water in that part of the creek used as a part of the canal. In 1849 the defendants enlarged their canal, and since that time the defendants, as appeared from the affidavits read by the plaintiff in opposition to the motion, had, during a portion of the season, raised the water in the creek, by means of flush boards placed upon the Eddyville dam, higher than they had been accustomed to raise it before.

The plaintiff alleged, in his complaint, that he was the owner of a farm with a water mill standing thereon in the town of Kingston, at the Greenkill and adjoining the Rondout creek, and that the tail race of the mill, which carried off the waters of the wheel, emptied into the Rondout creek about 100 feet from the mill. That the defendants, on the 9th of June 1853, erected and placed upon the Eddyville dam certain flush boards and timber, whereby the stream at the dam was raised about 15 inches above its usual and due height; that the effect of thus raising the water at the dam, situated one mile below the plaintiff's mill, was, to throw back the water and cause the same to rise at the plaintiff's mill 24 inches above its usual and due height; that the machinery of the mill was driven by an overshot wheel, and that the ordinary height of the water was about 15 inches below the outermost rim of the wheel; but that by placing the obstruction upon the dam, the wheel was immersed from 10 to 12 inches. The plaintiff further alleged that

he had purchased the land upon which the mill was situated, for the purpose of manufacturing hydraulic cement, and that the mill was necessary to enable him to carry on that business profitably; that, by reason of the back water, the power of the mill had been so far diminished as to render it almost entirely useless, and, in consequence thereof, that the plaintiff was injured in his business to the amount of $50 per day. It was further stated that the flush boards had been placed upon the dam about two-thirds of its length, and that, if the defendants should erect the same upon the whole length of the dam, as they threatened to do, it would render the plaintiff's mill entirely useless.

Upon the complaint, verified by the affidavit of the plaintiff, an order of injunction was granted by one of the justices of this court, on the 11th of June, requiring the defendants, their agents &c. to desist and refrain from placing any boards, timber or other substance upon the Eddyville dam, or doing any other act or thing in or about the dam by means whereof it should be raised above its original height, or the waters of the Rondout creek be caused to flow back, so as to interfere with the use of the plaintiff's mill. The affidavits read in support of the motion showed that the plaintiff had purchased the mill in March, 1853, since which no attempt had been made to run or use the same; that the mill was so entirely dilapidated and out of repair that it would cost $1500 to put it in running order; that the water wheel would have to be constructed anew. It further appeared that if the defendants should be prevented from raising the water of the Rondout creek so as to keep that portion of it used by the defendants as a part of their canal navigable through the season, it would result in great damage to the defendants, which damages were estimated, in the affidavits, at from seven to ten thousand dollars per day. It was further stated, in these affidavits, that if the water of the creek should fall three inches more it could not be navigated by the boats of the defendants. Affidavits were read on the part of the plaintiff, showing that the creek, without being raised by the flush boards placed upon the dam, would still remain navigable

for boats carrying a freight of 80 or 90 tons, instead of 112 tons, which was shown to be the ordinary freight carried upon the canal since its enlargement.

*M. Schoonmaker* and *T. R. Westbrook*, for the plaintiff.

*J. H. Reynolds* and *J. Hardenburgh*, for the defendants.

HARRIS, J.   If the defendants were authorized by their charter to enlarge their canal, they were also authorized to raise the dam in the Rondout creek so as to make that part of their canal navigable for their enlarged boats.   The *ninth* section of their charter authorizes them to enter upon, take possession of, and use all such lands, real estate and streams as should be necessary for the purposes for which they were incorporated, and provides for ascertaining the damages to which the owner of any property so taken might be entitled.   By the next section it is declared that " if any person or persons shall be injured, by means of any dam or dams being erected under the provisions of this act, or the land of any person shall be inundated by swelling the water, by means of any dam or dams, or any mill or other water works injured by swelling the water into the tail race of any such mill or other water works which may have been erected on any stream, that the corporation hereby created may use for the improvements authorized by this act, the same proceedings prescribed in the" preceding section might be had for the purpose of ascertaining the compensation for such injury.   If, therefore, the defendants had the right, under their charter, to enlarge their canal, and of course, to increase the depth of water in the Rondout creek, they would be liable to the plaintiff for any injury sustained by him by " swelling the water of the creek into the tail race of his mill."   The compensation for such injury might be ascertained in the manner prescribed in the act, or, if neither party should apply for such appraisement, the defendants would probably be liable in action adapted to the case.   But the plaintiff's right to erect and maintain the dam would be unquestionable.

Nor has the 22d section of the act, which requires that the company should give security &c. before taking possession of or exercising any control over any private property &c. any application to the cases specified in the tenth section. In all cases of taking property without the consent of the owner, the constitution requires that compensation shall first be made to the owner. But this principle has never been deemed applicable to a case of merely consequential damages, like that in hand. The plaintiff's property has not been taken or occupied; all that he complains of is, that it has been injured by means of an act done by the defendants elsewhere. For this injury, he may or may not have a right to recover damages; but, if the act itself was authorized by law, the defendants could not be restrained from doing it because it would result in an injury to the plaintiff. He must be confined to his action for damages, or the proceedings prescribed by the tenth section of the act. Thus, it will be seen the question whether the plaintiff was entitled to restrain the defendants from raising the water of the Rondout creek is made to depend upon another question, and that is whether they were authorized by their charter to enlarge their canal. If they had such authority, the act of raising the creek by the means described in the complaint, was a lawful act, and cannot be restrained. If on the other hand, they had no such authority, it was an unlawful act, and as it would produce injury to the plaintiff, he might have the defendants restrained by injunction.

To authorize a temporary injunction, it must appear from the complaint that the act sought to be restrained is unlawful, and that to allow such act to be committed or continued, during the litigation, would produce injury to the plaintiff. That the act sought to be prevented, in this case, would produce injury to the plaintiff, may be assumed. Then it remains to inquire, whether such act is unlawful. Thus, again, we are brought back to the question whether the defendants are authorized by the charter to enlarge the dimensions of their canal.

The defendants are authorized to construct and forever maintain a canal. That canal is to be of *suitable* width, depth and

dimensions; and, of the question what width, depth and dimensions are suitable, the defendants are made the judge. The question is to be determined, I suppose, in reference to the object which the legislature contemplated when they granted to the defendants their charter. That object is declared, in the preamble, to be the opening of a channel through which the city of New York and other parts of the state might receive a supply of stone coal found in the interior of the state of Pennsylvania. For the purpose of opening such a channel the defendants were incorporated. They were to construct and forever maintain a canal whose capacity should be "suitable" to this object. It is matter of history that upon opening this channel, it was soon found inadequate to the supply contemplated. The defendants, not long afterwards, enlarged the capacity of the canal by deepening its bed. Still it was ascertained that its increased "dimensions" were not "suitable" to the object contemplated; a supply of coal. The defendants then entered upon the project of enlarging the canal to its present dimensions. Of necessity the execution of that project must have involved very great expenditures. The defendants, it cannot be doubted, entered upon it in good faith, believing they had authority in their charter for making such an improvement. They have been permitted, undisturbed, to prosecute the work to its completion. By its completion, the public, not less than the defendants, are benefited. It is now more nearly suited to the accomplishment of the object which the legislature contemplated when it incorporated the defendants, than ever before.

Under these circumstances, I cannot say that the defendants have transcended their authority in constructing their enlarged canal. There is nothing in the language of the charter which leads me to suppose that the legislature intended that the defendants should determine, once for all, the size of their canal, and that, having constructed it of the limited dimensions first adopted, they should not be at liberty, whatever the necessity, subsequently to enlarge it. It seems to me far more in accordance with the avowed purpose of the legislature, to hold that, as the defendants were to maintain their canal forever, for the

purpose of furnishing to the city of New York and other parts of the state a supply of coal, it was intended, when it was referred to the company itself to determine the size of its canal, that it might determine to enlarge that size whenever, in its judgment, the demand for the article it was to supply, required such enlargement. Certainly, there is nothing in the terms of the charter which precludes this construction. Nor will any one deny that where the defendants, acting in good faith and with direct reference to the object for which they were endowed with legal existence, have constructed a work of great public utility at so great expense to the company, they are entitled to a liberal interpretation of the terms from which they supposed they derived their power to enter upon that work. Guided by such a rule of interpretation, there is no great difficulty in finding, in the defendants' charter, sufficient authority for them to make their enlargement. If they had this authority, it has already been seen that they had the legal right to raise, by a dam, the water of the Rondout creek, so as to make that portion of it used by them as a part of their canal, navigable for their boats of the enlarged size. The only remedy left to the plaintiff would then be an action to recover damages for the injury he had sustained, or proceedings, under the provisions of the tenth section of the defendants' charter, for the appraisal and payment of such damages.

But, upon a motion like this, it is not necessary to determine affirmatively, that the defendants had authority to make their enlargement. To entitle the plaintiff to a temporary injunction it was for him to make it appear, satisfactorily, that the defendants were doing an illegal thing. It must appear by the complaint, that the plaintiff is entitled to the relief demanded. This cannot appear in the case under consideration, unless it is shown that the defendants acted without legal authority in raising the dam at Eddyville. If that question is left in doubt, by the complaint itself, the plaintiff has failed to make a proper case for an injunction. Before a party can claim the summary interposition of the court to restrain an act which, if commit-

ted, will result in injury to him, he must show clearly that the act itself is illegal.

But, conceding, even, that it is clear that the defendants had no right to raise the water of the Rondout creek so as to cause it to flow back upon the plaintiff's water wheel, it does not follow as a matter of course, that the plaintiff was entitled to an injunction. It is not every case, even of a clear violation of the plaintiff's right, that entitles him to an injunction to restrain such violation. "It is not every case," says Story, "which will furnish a right of action against a party for a nuisance, which will justify the interposition of courts of equity to redress the injury, or remove the annoyance. But there must be such an injury, as from its nature is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot be otherwise prevented, but by an injunction." (2 *Story's Eq. Jur.* § 925.) And again, in the same section he says "A mere diminution of the value of the property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief."

Upon these principles the plaintiff was not entitled to an injunction. The injury of which he complains is susceptible of adequate compensation in damages. He will suffer no mischief which a sufficient amount of damages will not repair. Concede that the effect of raising the dam is all that he alleges it to be, still ample compensation can be made by damages in law. It is true, that, even in such cases, a perpetual injunction is sometimes awarded as the final judgment of the court, determining the rights of the parties. Such an injunction is awarded upon the principle that it is the office of a court of equity to suppress litigation by preventing a multiplicity of suits. But it is only granted in connection with a decree declaring the rights of the parties, or after such rights have been established at law.

There is yet another reason why I think the injunction ought not to have been granted. The provisions of the 219th section of the code are *permissive*, not imperative. It is not in every case in which a plaintiff brings himself within the letter of

Bruce *v.* President &c. of Delaware and Hudson Canal Co.

that section, that a temporary injunction should be allowed. Some regard should be had to the nature and extent of the injury which the plaintiff would suffer if the injunction should be withheld, and also to the consequences to the defendant, if it be granted. This extraordinary power of the court should only be exerted when it is necessary for the furtherance of justice, and the protection of the plaintiff's rights. In this case, assuming that the plaintiff is right in asserting that the defendants had no legal authority to raise the dam, the injury he was likely to sustain, as the consequence of this violation of his rights, would be very trifling and easily compensated in damages, while the consequences of an injunction, pending the litigation, might prove disastrous to the defendants beyond the power of the plaintiff to make compensation. Under such circumstances, the plaintiff, if right, could afford to wait until his rights should be declared by the judgment of a competent tribunal. Then, indeed, he would be entitled to protection in the enjoyment of those rights, of however little value they might be, and however much the defendants might suffer as the consequence of such protection.

In any view that I have been able to take of the case, the result is the same. The injunction was improperly allowed. It must therefore be vacated, with costs to abide the event of the suit.

[ALBANY SPECIAL TERM, July 26, 1853. *Harris*, Justice.]