## ARTHUR B. JOHNSON and another vs. THE UTICA WATER WORKS COMPANY.

The defendant was, by its charter, authorized and empowered, "for the purpose of supplying the city of Utica with pure and wholesome water," to purchase, take and hold any real estate, and to enter upon any lands necessary for that purpose, and to take the water from any springs, ponds, streams, &c., and divert and convey the same to that city; and to lay and construct any pipes, conduits, reservoirs, &c., proper for said purpose, upon any of such lands, after having caused a survey and map of the lands to be made and filed. And in case of failure to agree with the owners of lands or water, for the purchase thereof, provision was made for the appointment of commissioners to ascertain and determine the compensation. The company made and filed a map, and, in 1849, took proceedings for the acquisition of so much water as would flow through an aperture twelve inches in diameter, stating that so much water was necessary; and acquired it, having paid the damages assessed therefor. Subsequently it became necessary for the company to obtain an increased quantity of water to supply the city, and that it should have the right to take additional water for that purpose.

*Held*, 1. That in the absence of any words in the defendant's charter limiting its right to purchase or acquire lands or water, to one instance, or to one set of proceedings, or limiting the extent of its acquisition, other than to the purposes contemplated in the charter, the power to acquire lands and water for those purposes was not spent, nor the statute exhausted, by one exercise thereof.

2. That the charter did not provide for one, only, but for successive, *purchases*, and successive *acquisitions*.

3. That the object or purpose to be attained by means of the incorporation was continuous; and the right to acquire lands by the right of eminent domain was designed to be compulsory, to enable the company to accomplish the full purpose of its incorporation.

4. That there was no limit as to the time, or number of times, when the power could be exercised, if exercised for the purpose of effectuating the object of the defendant's incorporation.

5. That the company did not, by its proceedings, in 1849, to acquire so much water as would flow through an orifice twelve inches in diameter, exhaust the right to acquire additional water; provided it had need thereof "for the purpose of supplying the city of Utica with pure and wholesome water."

TRIAL by the court without a jury. The action was brought to restrain the defendant by injunction.

The plaintiffs are seised in fee of certain lands situate in the town of Frankfort, through which the waters of Starch Factory creek have been accustomed to flow for more than twenty years, in passing into the Mohawk

river. On the 31st of March, 1848, the defendant, "The Utica Water Works Company," was duly incorporated by an act of the legislature, entitled "An act to incorporate the Utica Water Works. Company." (*Laws of* 1848, *chap*. 154.)

Additional powers in respect to towns adjacent to the city were conferred upon the defendant by an act passed in 1853. In 1849, the Utica Water Works Company applied to this court for the appointment of commissioners, under their charter, to assess the damages sustained by Edward Gilbert and others, by reason of the taking of so much water from said streams as would flow through an aperture twelve inches in diameter, in the clear. The damages assessed were paid, and the company has enjoyed the use of such water.

The population of the city of Utica, in 1850, was 17,565, and now it is between 30,000 and 35,000, and increasing. Prior to 1851, the company laid down about six miles of cast iron pipe, to distribute the water from a reservoir. Since that time, it has laid down about five miles of pipe.

In 1868, the company made a contract with the city (pursuant to chap. 393, of Laws of 1867,) to supply it with water for the purpose of extinguishing fires. In 1868 the city required the company to make a new distributing reservoir, and the company laid about ten miles of additional pipe, making an expenditure therefor of about $130,000. There has been laid, since the contract aforesaid, about eight additional miles of pipe.

The defendant's works, during the last three years, have proved inadequate and insufficient to permit a constant supply of water to extinguish fires and supply the inhabitants who are now using the same; and it is conceded that "it is necessary that the company should construct additional reservoirs for receiving and storing water, and should have the right to take additional water over that now and heretofore used by the com-

pany, to enable it to furnish the city with a constant supply to extinguish fires, and also to furnish a constant supply to its inhabitants." (*See Stip.*)

The act of 1867 (chap. 393) authorizes the common council to contract with the Water Works Company for a sufficient supply of water to extinguish fires; and declares that "Said Water Works Company SHALL, when such contract is made, furnish water to the city of Utica for the purpose of extinguishing fires, and *shall* lay and extend its pipes and conduits in such streets as the common council *shall* designate, and *provide suitable* reservoirs to *constantly supply* said city with sufficient water for the extinguishment of fires."

A contract has been made by the Water Works Company, with the city, and the duty imposed by the statute now rests upon the Water Works Company.

*Waterman & Hunt*, for the plaintiffs.

*Francis Kernan* and *John F. Seymour*, for the defendant.

HARDIN, J.   The trial of this action presented for the decision of the court only one question, and that arises upon a conceded state of facts.

The learned counsel for the plaintiffs insist, that inasmuch as the Water Works Company, in 1849, filed a map, and took proceedings for the acquisition of so much water as will flow through an aperture twelve inches in diameter, in the clear, and then stated that so much water was necessary, and acquired it, the power to acquire any other water, springs or streams, is gone, the statute has been exhausted, and the company is now only permitted to acquire further water by means of purchase.

The eighth section of the defendant's charter provides as follows:

"§ 8. For the purpose of supplying the said city of Utica with pure and wholesome water, the said company may purchase, take and hold *any* real estate, *and* by their directors, agents and servants, or other persons employed, may enter upon the lands of *any* person or persons which *may be* necessary *for said purpose*, and may take the water from *any* springs, ponds, fountains or streams, and divert and convey the same to said city, and may lay and construct any pipes, conduits, aqueducts, wells, reservoirs, or other works or machinery necessary or proper for said purpose, upon any lands so entered upon, purchased, *taken* or had; but the said company shall not convey or divert any water from the Saquoit creek." * * *

The ninth section provides that before entering, taking and using any land for the purposes of the act, the directors shall cause a survey and map to be made, of the lands intended to be taken or entered upon for any of said purposes, by which the land of *each* owner or occupant, intended to be taken or used, shall be designated * * * and be filed in the office of the clerk of the county of Oneida."

Then follows a provision in respect to *lands or water* which may be taken by the company by proceedings similar to those provided for condemning lands for railroad purposes.

The tenth section provides that "in case the said company cannot agree with the land owners and occupants of *any lands* or *water* allowed to be taken or used as aforesaid, for the purchase thereof, the directors may apply to the Supreme Court, at any term or session thereof held in the fifth judicial district, for the appointment of three commmssioners, by whom the compensation for the damages suffered or to be suffered by any person or persons, by reason of taking said lands or water and constructing *any* of the works of said company, shall be ascertained and determined."

The 12th section provides that "upon payment or legal tender of the compensation awarded by the said commissioners * * the company shall be entitled to enter upon, *for the purposes contemplated by this act*, all the lands and real estate for which said compensation shall be paid or tendered as aforesaid, and to *hold* and use the same, for the said purposes, to them and their successors FOREVER."

The 16th section declares, "the said company *shall* furnish water to the city of Utica for the purpose of extinguishing fires, upon such terms as may be agreed upon."

The language of the 8th and 10th sections of the charter obviously authorize the acquisition of the lands of different owners or occupants ; and it is equally clear that water owned by different persons in severalty may be purchased, or acquired by means of resort to the right of eminent domain delegated to the company.

Not only does the charter provide for one, but for successive *purchases*, and successive *acquisitions*. If further evidence was required than that furnished by the language quoted, it may be found in a subsequent part of section 10, which provides for notice to be served upon "the owners of said land and water."

No part of the charter, in terms expressly, or inferentially, limits the right of the company to acquire lands or water, to one instance, nor to one set of proceedings. The only restriction placed upon the company relates to the purposes of the incorporation. The great and leading purpose of the corporation is to supply the city "with pure and wholesome water."

The language of the 8th section authorizes the company to take and hold the water from "any springs, ponds, fountains, or streams," for "the purpose of *supplying* the said city of Utica," with pure and wholesome water.

The use of the word "supplying" favors the idea

that the company is authorized to keep a continuous *supply*, as time and circumstances shall require. The section suggests to the mind the same idea as though it had read, "For the purpose of keeping up a supply of water for the city of Utica."

It is the "purpose contemplated by the act;" and for that purpose the 12th section declares that after payment of the compensation awarded by the commissioners, the company "shall be entitled to enter upon all the lands, *waters* and real estate for which such compensation shall be paid, and to hold and use the same, for the said purposes, to them and their successors forever."

In *Bruce* v. *Delaware and Hudson Canal Co.*, (19 *Barb.*, 376,) a question was presented to the court in respect to the power of the company to acquire additional lands, and to make additional excavations to deepen their canal, rendered necessary after its completion, by an increasing demand for its use, to effect the purposes of its construction and incorporation. The court says: "The question is to be determined in reference to the object which the legislature contemplated when they granted to the defendants their charter. * * They were to construct and forever maintain a canal whose capacity should be suitable to this object." After stating a series of expenditures which had been made, to increase the capacity of the canal, (and the like fact appears in this case,) HARRIS, J., adds: "There is nothing in the language of the charter which leads me to suppose that the legislature intended that the defendant should, *once for all*, determine the size of their canal, and that, having constructed it of the limited dimensions first adopted, they should not be at liberty, whatever the necessity, *subsequently* to enlarge it."

As has already been shown, there are no words in the charter of the Water Works Company limiting its rights to purchase or acquire lands or water to one instance,

nor limiting the extent of its acquisition, other than to the purposes contemplated by the act of incorporation. " The purpose of supplying the city of Utica with pure and wholesome water," may be said to be quite as continuous and lasting as "the purpose of supplying the city of New York and other parts of the state with coal." Therefore the reasoning of the court in *Bruce* v. *Delaware and Hudson Canal Co.* is applicable in this case. That case was approved, at General Term, in 1855, in *Selden* v. *Same Company*, (24 *Barb.*, 362;) and in 1864, the latter case was affirmed by the Court of Appeals, (29 *N. Y.*, 638;) where it was expressly determined that "the company did possess the power to enlarge, and could, if necessary, *appropriate lands* for that purpose, under the exercise of the power of supereminent domain conceded to them in the charter." (*Id.*, 638.)

It was held, in the *C. B. and Q. R. R. Co.* v. *Wilson*, (17 *Ill. Rep.*, 123,) that a grant to a railroad company, to construct a railroad with such appendages as it may deem necessary for the convenient use of the same, will authorize them to take lands compulsorily, for *work shops*. And this power is not exhausted by the *apparent completion* of the road. If *an increase* of business shall require other appendages, or more room for tracks, it may in like manner be taken, *toties quoties.* (*South Carolina R. R. Co.* v. *Blake*, 9 *Rich.*, 228. *Redfield on Railw.*, 72, 122.)

The duty imposed by the charter upon the Water Works Company, to supply the fire department with water to extinguish fires, favors the construction already given, that the object or purpose to be attained by means of the incorporation is continuous, and that the right to acquire lands by the power of eminent domain was designed to be compulsory, to enable it to accomplish the full purpose of its incorporation.

There is no limit as to time or number of times, when

the power may be exercised, if for the purpose of effectuating the object of the incorporation of the defendant.

The right or power of eminent domain rests with the legislature. "It may be exercised by means of a statute which shall at once designate the property to be appropriated, and the *purpose* of the appropriation; or it may be delegated to public officers, or, as it has been, repeatedly, to private corporations established to *carry on enterprises* in which the public are interested. There is no restraint upon the power, except that requiring compensation to be made. The necessity for appropriating private property for the use of the public, or of the government, is not a judicial question." (*Per Denio, J., in People* v. *Smith*, 21 *N. Y.*, 598. *See N. Y. and Harlem R. R. Co.* v. *Kip*, 46 *id.*, 552.)

It follows from the views already expressed, that the company did not, by the proceedings in 1849, to acquire so much water as would flow through an orifice twelve inches in diameter, exhaust its right to acquire further water, provided it has need thereof, "for the purpose of supplying the city of Utica with pure and wholesome water."

Whether that necessity exists, can be determined at the proper time, but the question does not arise here. (*Rensselaer and Saratoga R. R. Co.* v. *Davis*, 43 *N. Y.*, 137. *N. Y. and Harlem R. R. Co.* v. *Kip*, 46 *id.*, 551. *Dwarris on Stat. by Potter*, 383.)

Judgment is ordered for the defendant upon the issues raised and considered on the trial. The other questions are reserved for a further hearing.

[ONEIDA SPECIAL TERM, October, 1873. *Hardin*, Justices.