# SUPREME COURT.

## American Grocer Publishing Association agt. The Grocer Publishing Company.

*Injunction to protect the name of a newspaper — violation of a trade mark.*

The rule is, that where the whole equity of a complaint is denied, the injunction ought not to be continued *pendente lite*.

But any evasion in not responding to the charges in the bill, or any extreme improbability in the statement of the defendant, will induce the court to retain the injunction.

A court of equity will protect a person in the use of a trade mark, such as the name of a newspaper, although the name adopted is one that belongs to the language of the country and may be employed in any way, or for any purpose, which will not defraud individuals or deceive the public.

In this case, *held,* that after carefully inspecting the two papers, it could not be said that the resemblance between them was such as to justify the court, on a motion, to determine that the defendant's paper was intended to be passed off upon the public, nor that it would be likely to be purchased by the customers of the plaintiffs as and for the plaintiffs' paper. Injunction denied.

*New York Supreme Court, General Term, June,* 1876.

*Mr. Andrews,* for plaintiff.

*Mr. Porter,* for defendant.

Lawrence, *J.* — The answer and the affidavits read on the part of the defendants on the motion to continue the injunction herein, *pendente lite,* deny in very positive terms the allegations in the complaint, and in the moving affidavits on which the injunction was granted and on which its continuance is asked for. The rule undoubtedly is, that where the

American Grocer Publishing Association agt. Grocer Publishing Co.

whole equity of a complaint is denied, the injunction ought not to be continued *pendente lite* (*Finnegan* agt. *Lee*, 18 *How. P. R.*, 186, 187; *Leen* agt. *Need*, 7 *Rob.*, 67; *Blatchford* agt. *N. Y. and N. H. R. R.*, 7 *Abb.*, 322). Any evasion in not responding to the charges in the bill or any extreme improbability in the statement of the defendant will, however, induce the court to retain the injunction (*Moore* agt. *Hylton*, *Der. Eq. R.*, 429; *Williams* agt. *Hull*, 1 *Bland*, 195; *Shier* agt. *Coe*, 2 *Bos.*, 661; *Leen* agt. *Need*, 7 *Rob.*, 67). It was held in the case of *Matsell* agt. *Flanagen*, 2 *Abb.* [*N. S.*] 459) that a court of equity will protect a person in the use of a trade mark, such as the name of a newspaper, although the name adopted is one that belongs to the language of the country and may be employed in any way, or for any purpose, which will not defraud individuals or deceive the public; that the doctrine of the protection of trade marks does not depend entirely upon invasion of individual rights, but upon the broad principles of protecting the public from deceit, and in that case it was held that the defendants were engaged in selling and publishing a paper which, from its general character and appearance, was a fraudulent simulation of the plaintiff's newspaper, and that from an inspection of the paper it was apparent that the defendants' paper was designed to and did in fact mislead the public (2 *Abb.* [*N. S.*], 463). In that case the preliminary injunction was continued.

I stated on the argument of this case, that if upon an inspection of the defendants' paper it should appear to me that it was an imitation or simulation of the paper of the plaintiffs', and as such designed to mislead the public, the injunction would be continued. After carefully inspecting the two papers, I cannot say that the resemblance between them is such as to justify me, on a motion, in determining that the defendants' paper was intended to be passed off upon the public, nor that it would be likely to be purchased by the customers of the plaintiffs', as and for the plaintiffs' paper.

American Grocer Publishing Association agt. Grocer Publishing Co.

The defendants produce several affidavits from those acquainted with the plaintiffs' paper, which repel such a conclusion, and which certainly meet the plaintiffs' allegations in that respect. The allegation that orders were given to the defendants' agent to procure similar type to that used by the plaintiffs in printing their paper is also controverted by the defendants' affidavits. The circular addressed by the editor of the defendants' paper, who was formerly the editor of the plaintiffs' paper, is quite explicit in its statements that Mr. Price has assumed the editorial charge of another newspaper, and any one subscribing for the new paper in consequence of the receipt of that circular certainly cannot be supposed to have believed that he was subscribing for the American Grocer.

This case, therefore, to me, as it now stands, seems to come within the rule laid down in *Snowden* agt. *Noah* (1 *Hopkins' Chancery Rep.*, 347). In that case the chancellor held that a newspaper establishment is a subject of property and of contract, and that the right to it may be protected by a court of equity, and that a person who had sold such an establishment has no right to continue a publication as the same, but that he may set up a different rival paper. He also held, that if the question whether the rival paper is the same or different be doubtful, that doubt is a sufficient reason to refuse an injunction and to leave the parties to their remedies at law.

That case very closely resembles the case now under consideration in most of its essential features. The defendant Noah was the editor, but not the proprietor, of the newspaper establishment called the National Advocate, and immediately after the sale of that establishment to the complainants by its former proprietor, Noah established another newspaper under the title of the New York National Advocate. This new gazette was sent to the subscribers of the former National Advocate, and Noah solicited and continued to solicit the support of the patrons of the former paper and of the public to his newspaper. The chancellor, in his opinion in the case,

American Grocer Publishing Association agt. Grocer Publishing Co.

says: " The business of printing and publishing newspapers being equally free to all, the loss to one newspaper establishment which may follow from the competition of any rival establishment is merely a consequence of the freedom of this occupation, and gives no claim to legal redress." " Then, after stating as above mentioned, that newspaper property, like any other, is entitled to the protection of the laws, he continues: " The subject in respect to which an injunction is asked is what is called the good-will of the establishment, or the custom and support which the National Advocate had before received from its subscribers and patrons, or from the public. The effort of Noah is to obtain for his newspaper the support of the public in general, and especially the custom and good-will of the friends of the National Advocate. This object is distinctly avowed, and an open appeal is made to the friends of the National Advocate and to the public to give their support to the new paper.  *  *  *

" The open appeal made to the public in favor of the new journal as a new and distinct paper seems to remove from this case every objection. Noah is at liberty to invite the subscribers and patrons of the National Advocate to give him their support, and they are entirely free to accept or reject his invitation. They, like others, may give their support to either, or neither, or both, of these papers." He then states that the name of the new paper is sufficiently distinct from Snowden's paper to apprise all persons that they are really different papers. The resemblance in the names of the papers in that case was as great as in this. That case seems to be conclusive, on a mere motion to continue an injunction, of the present case. Price seems to me to have done in this case very much what Noah did in the case decided by chancellor SANDFORD.

It may turn out, upon a trial of this cause, that the denials of the defendants are false, but on their face they warrant the defendants.

In making the rule referred to at the commencement of

this opinion, I do not intend to be understood as passing, in any sense, upon the merits of this case, it being sufficient to say that under decisions in thoroughly considered cases the plaintiffs, at the present stage of their case, are not entitled to an injunction.

There is another consideration which has impressed me strongly in determining as to the proper disposition to be made of this motion. If the injunction should be continued, the business of the defendant will be entirely suspended until a trial of the cause can be had, and if upon the trial it should appear from the facts in the case that the plaintiffs are not entitled to the relief which they seek, the damage to the defendant may be irreparable. On the other hand, the plaintiffs have ample remedy at law for any wrong which they may sustain by reason of the wrongful acts of the defendant if such wrongful acts can be proven.

In the language of HARRIS, J. (19 *Barb.*, 379), in *Bruce* agt. *Del. and Hud. Can. Co.*, " some regard should be had to the nature and extent of the injury which the plaintiff would suffer if the injunction be withheld, and also to the consequences to the defendants if it be granted." And after stating that the loss which the plaintiff would sustain, assuming him to be right in his claim, would be trifling and easily compensated in damages, while an injunction pending litigation might prove disastrous to the defendants beyond the power of the plaintiff to make compensation, he concludes : " Under such circumstances the plaintiff, if right, could afford to wait until his rights should be declared by the judgment of a competent tribunal. Then, indeed, he would be entitled to protection in the enjoyment of those rights, of however little value they might be, and however much the defendants might suffer as the consequence of such protection."

Concurring in these views as fully and fairly stating the rule to be followed in motions of this character, and applying such rule to the case before me, I reach the conclusion that the motion to continue this injunction must be denied.