JOHN G. UNDERHILL, Plaintiff, *v.* JOSEPH M. SCHENCK, RICHARD H. HERNDON and JACINCTO BENAVENTE, Defendants.

(Supreme Court, Kings Speciaı Term, March, 1921.)

Injunctions — dramatic compositions — when licensee does not acquire motion picture rights — injunction pendente lite denied as to use of name.

Under a grant by the author of a dramatic composition of the right to translate and adapt it into the English language and to perform or cause to be performed in said language, the licensee does not acquire the motion picture rights to the play. (Pp. 522, 523.)

Where subsequent to such a grant the author of the play transferred the motion picture rights therein to another, the licensee of the right of translation and spoken performance is not entitled, upon the theory of unfair competition, to an injunction *pendente lite* to restrain, in connection with any motion picture production of the play, the use of the title " The Passion Flower " which plaintiff devised for the spoken drama and of lines, captions and titles in the English language in connection with any such production.

MOTION for a preliminary injunction.

Paul Bonynge, for plaintiff.

Newmann & Newgass, for defendant Schenck.

Elijah N. Zoline, for defendant Herndon.

Wingate & Cullen (Conrad S. Keyes, of counsel), for defendant Benavente.

ASPINALL, J. This is a motion for a preliminary injunction restraining the defendants from using the title " The Passion Flower," or any lines, captions or titles in the English language, in connection with any motion picture production of a dramatic composition by one of the defendants Benavente. The composition in question is a three-act drama entitled " La Malquerida," the English equivalent being " The Ill-Beloved." The composition was duly copyrighted by the author Benavente in the year 1914 under the title " La Malquerida." In the year 1917, by written contract, the author granted to the plaintiff upon the terms and conditions therein specified " the sole right to translate and adapt into the English language, and to perform or cause to be performed in the said language, the drama in three acts entitled ' La Malquerida.' " The plaintiff thereupon prepared an English translation and adopted therefor the title " The Passion Flower," which he claims to have invented and devised. Thereafter and pursuant to a contract made in January, 1920, between the plaintiff and the defendant Herndon, the latter produced the drama under that name in many of the principal cities of the United States, including about 150 performances of said drama in the city of New York, and that public performances of said drama are still being given regularly and with great success. Both before and after the contract of January, 1920, the plaintiff and the defendant Herndon were negotiating for the acquisition by the latter of the motion picture rights. As a result, in or about February, 1920, an agreement was made between the plaintiff and the defendant

Supreme Court, March, 1921.    [Vol. 114.

Herndon by which the former assumed to transfer to the latter a one-half interest in and to the motion picture rights of the play "The Passion Flower" throughout the world, and Herndon gave to the plaintiff, as a part of the consideration, a check for $500. These negotiations were conducted in the belief that the author's approval could be obtained to any disposition of the picture rights by the plaintiff. Subsequently the check was returned to the defendant Herndon on the ground that the plaintiff had been advised that the picture rights of " La Malquerida " had been disposed of through an agency in the city of Paris and " that, therefore the author is not able to make a contract concerning them." When the defendant Herndon learned that the author had transferred the picture rights for the world to one Gonzalez he immediately entered into negotiations with the latter, with the result that in June, 1920, he acquired all Gonzalez's rights under the latter's contract with the author. Subsequently, in October, 1920, the defendant Herndon sold and assigned to the defendant Schenck the picture rights for a consideration of $25,000. The defendant Schenck thereupon began the preparation of a photoplay, in which a celebrated actress, Miss Norma Talmadge, was to star, upon a scale that already has involved an expenditure of over $100,000 and will require further and large additional expenditures, and besides has incurred important contractual obligations. The contemplated production under the name of " The Passion Flower " has been widely advertised. This being the situation, the plaintiff seeks injunctive relief as before stated.

In my opinion the plaintiff never acquired the picture rights to the drama. The grant from the author does not expressly transfer such rights and the language employed is too restricted to embrace them by

implication. The right conferred by the grant is " to translate and adapt into the English language, and to perform or cause to be performed in the said language * * *." A motion picture play is not a performance in the English or in any other language. Its chief characteristic is that it is a performance practically without language. Such words, phrases and short sentences as are thrown upon the screen at intervals for purposes of elucidation and explanation are not necessarily taken from the spoken drama. It seems quite clear to me from the phraseology of the grant by the author to plaintiff that the parties contemplated the presentation of the drama, as translated by the plaintiff, upon the stage, by speaking actors. See *Klein* v. *Beach,* 239 Fed. Repr. 108; 232 id. 240. This case distinguishes *Frohman* v. *Fitch,* 164 App. Div. 231; and that case is further distinguishable by the broader language of the grant. Moreover, the plaintiff does not seriously contend that he possesses the picture rights to the drama. In the prayer of the complaint, he does not ask for an injunction to prevent the production of any photoplay, but only for an injunction against the use of the title " The Passion Flower " and of any lines, captions and titles in the English language in connection with any such production. Such also is the language of the order to show cause, and in his brief he urges that even if he has not acquired " in express terms " the right to make a picture production of the drama " it is clear that his sole right to translate and adapt into English is ample to prevent *any such* production by another."

The plaintiff's real contention is that he devised or invented the title . " The Passion Flower " for the spoken drama and that its appropriation by the defendants for the contemplated photoplay is the vio-

lation of a right exclusive to himself and so consti-
tutes unfair competition. It may be here said that
his claim to be the originator of this title is not sub-
stantiated by the records in the copyright office, which
disclose that this identical title has been previously
adopted by others in connection with both dramatic
and literary compositions; but this is immaterial, for
relief in equity lies to the adopter and user of a title,
not to the inventor of it. Frohlich on Motion Pic-
tures, § 121; *Dickey* v. *Mutual Film Corp.,* 160 N. Y.
Supp. 609. It must be conceded that the plaintiff first
adopted the title for his spoken drama. But priority
of adoption and use alone is not sufficient, for the
plaintiff has no exclusive property right in the name
"Passion Flower." The drama was not copyrighted
under that title, nor was it ever so registered as a
trade mark, name or label. It is the name of a flower.
One of the definitions in the Century Dictionary is
"any plant of the genus Passiflora." Any one may
apply the name to a poem, a country estate or a race
horse, as fancy dictates. To justify injunctive relief
against the wrongful appropriation of a name or title,
fanciful in its nature, there must be added to the
requirement of priority of adoption the further
essential that the title must have been so used as
to have acquired a *secondary* meaning, which iden-
tifies it in the public mind with a particular com-
position, object or thing. *Manners* v. *Triangle Film
Corp.,* 247 Fed. Repr. 301, 303; *Selig Polyscope Co.*
v. *Unicorn Film Service Corp.,* 163 N. Y. Supp.
62; Frohlich on Motion Pictures, 410, § 121. These
two essentials create a right akin to a property right
which equity will protect against an unauthorized
appropriation by another under circumstances that
would work a fraud and deceit upon the public to the
injury of the complainant. Plaintiff claims that the

present situation meets the requirements of the rule. He claims (1) priority of adoption of the title; (2) that by the many performances given, the title acquired a secondary meaning by which it became identified in the public mind with the spoken play; and, (3) that the production of the photoplay under the same title would diminish the financial returns from the spoken play to his great injury. This, the plaintiff claims, entitles him to invoke the doctrine of unfair competition.

It has been said that this doctrine rests upon the principle " of common business integrity " and that the gist of the action " is not the harmless use of the particular words and symbols, but the appropriation of a competitor's business to his injury." The law is similar to that relating to trade marks. It is based primarily upon the theory that no one may, by the use of names, signs, symbols or marks, perpetrate a fraud upon the public by inducing the belief that his business, goods or product is that of another. It has also been said that fraudulent conduct " without damage will not suffice " (26 R. C. L. § 57, p. 882) ; also that the basis of actions of this character is damage to the complainant and not to the public. *Munn & Co.* v. *Americana Company,* L. R. A. 1916 D, 116, 117. Again, it has been asserted that the doctrine does not depend entirely upon an invasion of individual rights but also upon the principle that the public is entitled to protection against deception and fraud arising from the use of previously appropriated names and symbols. *Matsell* v. *Flanagan,* 2 Abb. Pr. (N. S.) 459, 461; *American Grocer Pub. Assn.* v. *Grocer Pub. Co.,* 51 How. Pr. 402, 403. The true rule, however, seems to be that equity intervenes to protect both the complainant and the public. Hopkins on Trade Marks (3d ed.), §§ 21, 22.

In my opinion the plaintiff is not entitled to invoke the doctrine. The copyright law secures to an author the exclusive right to dramatization, and this includes the right to produce the drama or composition as a spoken play and as a picture play, these distinct rights being originally united in the author or composer. *Kalem Co.* v. *Harper Bros.,* 222 U. S. 55. In the present case, however, the grant from the author to the plaintiff transferred only the rights of the former in the spoken play. Whatever rights may have been acquired by the defendants by subsequent transfers from the author and his transferees, the plaintiff has the undoubted right to translate and perform as a spoken play. But the plaintiff, in exercising his admitted right in this respect, discarded the title of the author and substituted his own, adopting the name "The Passion Flower." In my opinion the plaintiff's act in this respect had a tendency to deceive the theatre-going public, for the reason that the public would not generally know that the spoken drama, produced under the title "The Passion Flower," depicted the same plot, characters and scenes as the copyrighted drama, "La Malquerida." Under the title "Plays of Jacinto Benevente" the plaintiff himself has copyrighted a book containing this drama under the name "La Malquerida." Did the public generally know that the drama contained in plaintiff's book was being produced as "The Passion Flower?" Did a person, who had read and possibly disapproved of "La Malquerida," know that he was to witness this drama when he purchased a ticket for "The Passion Flower?" Whether or not plaintiff's action in discarding the author's title and substituting his own subjects him to any criticism is not a question for me to determine, but it is quite apparent to me that it cannot be a ground for equi-

table intervention. The plaintiff asks equity to compel the defendants to produce this photoplay under the title which he discarded or under some other title. The direct result of relief of this character would deceive the public as to the identity, in plot, characters and scenes, of the spoken play with the picture play. In my opinion the public is entitled to just such knowledge, and any application for relief in equity which involves the deception of the public in this respect does not commend itself to this court. If equity will enjoin, as it frequently does, the production of a photoplay under the *same* title as the spoken play because of the diversity of authorship, plot, characters and scenes, it will not compel the adoption of a *different* title for the photoplay when the authorship, plot, characters and scenes are identical. The ground upon which equity should intervene in the one case, and refuse to intervene in the other, is the same. To prevent any semblance of deception upon the public, equity will grant or withhold the relief sought as the occasion may require. In the present case, it seems to me that the relief which plaintiff asks would tend to deceive the public into the belief that a picture play presented under the title '' La Malquerida '' or some other title was not the drama produced under the title of '' The Passion Flower.''

Plaintiff complains of the possible injury resulting from the competition that would arise between the spoken drama and the picture play about to be produced by the defendant. That such competition may result from the simultaneous production of a spoken play and a picture play is recognized, and protection has been frequently afforded a plaintiff against a defendant who threatened to appropriate, wrongfully, the title of a spoken play and give it to a proposed picture play different in plot, characters, scenes and

Supreme Court, March, 1921. [Vol. 114.

authorship. Usually, in such cases, it will be found that the entire right of dramatization was in the plaintiff. Many such cases are cited in Frohlich on Motion Pictures, beginning on page 413. In the present case, however, the plaintiff never acquired the picture rights, and the theory of his action is not the protection of any rights secured under the copyright. Plaintiff further contends that the grant to him of the right to translate and adapt into the English language negatives the right of the defendants to produce the proposed picture play. I do not agree with this contention. If I am correct in the view that the plaintiff acquired the rights to the spoken play only, the grant of the right to translate must be construed as limited to the requirements of the spoken play. Moreover, the defendant, Schenck, disclaims any intention of appropriating plaintiff's translation, but claims that he is making a motion picture production from the original play.

The plaintiff claims in point 5 of his brief that even if he did not acquire the right in express terms to make a motion picture production of the play, his " sole right " to translate and adapt into English is sufficient to prevent any such production by another. Citing *Manners* v. *Morosco*, 252 U. S. 317–325, 326. That was a suit to restrain the production of a motion picture play in violation of the copyright of the complainant, who was the author. The suit involved the question of infringement. But in point 1 of plaintiff's brief he distinctly states that he " does not complain of any infringement of copyright," but that this lawsuit is brought to test merely the title to literary property and " not an invasion or piracy of that property." If the suit were to prevent the production of a photoplay because of infringement of rights secured by the copyright, then the suit should have been begun

in the Federal courts (Frohlich on Motion Pictures, § 121; *O'Neill* v. *General Film Co.,* 171 App. Div. 854–867); but if the purpose of the suit be, as plaintiff asserts, to prevent the use of the title " The Passion Flower," on the theory of unfair competition, I am of opinion that, for the reasons stated, the plaintiff has shown nothing entitling him to relief in equity.

Why reference was made to the plaintiff in this action in the agreement made on the 13th day of October, 1920, between the defendants Herndon and Schenck, I am not called upon to explain or determine on this motion, for the reason that all of the facts and circumstances connected with this controversy will undoubtedly be given in detail upon the trial of this action.

Motion for a preliminary injunction denied.

Motion denied.