The Chicago and Northwestern Railway Company

*v.*

Thomas A. Galt.

*Filed at Ottawa January 21, 1890—Re-filed June 12, 1890.*

1. Eminent domain—*of the petition—the necessity for it—and its requisites.* To put the court in motion, and give it jurisdiction in condemnation proceedings, a petition is, in general, necessary, and must be in conformity with the statute granting the right of condemnation. It should set forth, by appropriate averments, all such facts as are necessary to authorize the tribunal to act.

2. The petition should show the use or the purpose for which the property is desired, and that it is within the statutory powers conferred. It should show a clear right to condemn the property described. The petition must not only show that the property is wanted for a public use, but also that it is for a use that is within the particular statute under which the proceedings are had.

3. A petition by a railroad company to condemn land stated that the land sought was "needed by said company for their right of way, and for the alteration of River street, in said town of S.," etc. The company, by its charter, was authorized to condemn only for railroad purposes,—not for streets: *Held*, that under such a petition the court could not condemn the whole or any part of the land for right of way, the use for which the property was sought being indivisible.

4. So where a proceeding to condemn land shows upon its face that it is for two distinct uses or purposes, one of which is lawful and the other not, and the two purposes are so inseparably blended in the petition and orders as not to be capable of severance, it can not be sustained.

5. Same—*for the particular purpose, only—as, for railroad purposes—railroad company laying out a public street.* A provision in the charter of a railway company, that it "may, by its agents, engineers and surveyors, enter upon and take possession of and use all of such land and

42—133 Ill.

real estate as may be necessary and indispensable for the construction and maintenance of such railroad, and the appendages and accommodations requisite and appertaining thereto," gives power to take and condemn land for railroad purposes only. It gives no authority to condemn land for a public street.

6. Under such a provision of law, a proceeding by a railway company to condemn land for the purpose of making a public street in an incorporated town, in the place of one appropriated by the company for its right of way, is without authority of law, and the court in which the proceeding is had will acquire no jurisdiction. The company has no power to lay out a public street or to change the location of one already established, and an attempt to do so is abortive, and a nullity.

7. Same — *strict construction — effect of irregularities — presumption.* The power to force a man to give up his property against his will, and for a price to be fixed by others, is in its nature harsh and against common right, and such power, to be effectual in its exercise, must be strictly pursued.

8. The jurisdiction in condemnation cases is of a special character. It is a jurisdiction to proceed to a final determination in the mode provided by law, and any material departure from that mode will be fatal to the proceedings.

9. A proceeding to condemn land is summary, and in such cases no presumptions are indulged in by the courts in favor of the regularity and validity of a proceeding to divest the citizen of his property without his consent.

10. Same—*payment of compensation and damages—as essential to the right of possession.* As the corporation seeking a condemnation for a public use may abandon the proceeding after the assessment of the compensation and damages, its right to the possession of the property depends upon proof of the payment of the damages. Payment in such a case will not be presumed after the lapse of twenty years, as in the case of ordinary judgments for money, unless possession under the judgment was taken and kept for that length of time.

11. Jurisdiction—*presumption—as, in case of special statutory jurisdiction.* In respect to special statutory jurisdiction, the court or judge exercising it may be regarded as an inferior tribunal, and possessing no power not given by the statute, and therefore irregularities in the proceedings may be taken advantage of collaterally.

12. At common law, the record of courts of inferior jurisdiction, or of any court exercising a special statutory power, was required to show affirmatively all the facts necessary to give jurisdiction, and that the proceedings were according to law.

13. Limitations—*of the possession required—to defeat the title of the owner of land.* An adverse possession sufficient to defeat the title of the

true owner, in the absence of color of title, must be hostile in its inception, and continue uninterruptedly for twenty years. It must be of such character as to notify the true owner of an adverse claim and invasion of his rights.

14. Mere acts of trespass upon vacant and uninclosed land, not amounting to an exclusive appropriation thereof, and not made under a *bona fide* claim of ownership, or under circumstances indicating such a claim, do not constitute an adverse possession, within the meaning of the Limitation law. Such adverse possession can not be inferred, but must be proved.

Appeal from the Circuit Court of Whiteside county; the Hon. John D. Crabtree, Judge, presiding.

Messrs. W. & W. D. Barge, for the appellant:

The title the company gets is acquired under the statute, and was vested by the condemnation proceedings when the commissioners' report was approved by the court and the damages paid. *Railroad Co.* v. *Smythe,* 45 Ind. 322; Mills on Eminent Domain, sec. 334.

After the lapse of twenty years a judgment is presumed to have been satisfied. *Cope* v. *Humphreys,* 14 S. & R. 15.

Where money has been due for more than twenty years, the law presumes its payment. *McCormick* v. *Evans,* 33 Ill. 327; *Langworthy* v. *Baker,* 23 id. 484; 2 Greenleaf on Evidence, sec. 528; *Reed* v. *Reed,* 46 Pa. St. 230; 2 Starkie on Evidence, sec. 597; 1 Phillips on Evidence, 675; *O'Brien* v. *Holland,* 3 Blackf. 490; *Morrison* v. *Funk,* 23 Pa. St. 421; *Downey* v. *Sooy,* 28 N. J. Eq. 55.

An order confirming report of commissioners is a final order, from which an appeal lies. Lewis on Eminent Domain, sec. 551; *Turnpike Co.* v. *Railroad Co.* 15 Md. 193.

Where no damages are awarded as to one lot, it will be presumed that none were found by the viewers. Mills on Eminent Domain, sec. 330; *Monagh* v. *County Comrs.* 8 Cush. 360; *Howland* v. *Commissioners,* 49 Me. 43; *Point-no-point Road,* 2 Serg. & Rawl. 277.

If the petition is defective in stating the purpose of the taking and the manner in which the land is to be used, the proper mode of taking advantage of the defect is by demurrer. *Hardy* v. *Keene,* 54 N. H. 442; 3 Wend. 42; Lewis on Eminent Domain, sec. 359.

When the owner appears and contests the question of damages, he will be estopped, in a collateral proceeding, from questioning the validity of the judgment. Lewis on Eminent Domain, secs. 88, 606; Pierce on Railroads, (2d ed.) 191; *Dyckman* v. *Mayer,* 5 N. Y. 434; *Hydraulic Co.* v. *Railway Co.* 109 Ind. 172; *Ogden* v. *Stokes,* 25 Kan. 517; *Town* v. *Town of Blackberry,* 29 Ill. 137; *Griswold* v. *Stewart,* 4 Conn. 458.

After the owner of land has accepted the damages allowed for opening a highway, it is too late for him or his grantee to declare the proceedings for opening it void. *Town* v. *Town of Blackberry,* 29 Ill. 137; *Railroad Co.* v. *Karnes,* 101 id. 402; *Rees* v. *Chicago,* 38 id. 322; Lewis on Eminent Domain, sec. 606; *Town of Kile* v. *Yellowhead,* 80 Ill. 208; Mills on Eminent Domain, sec. 329; *Burns* v. *Railroad Co.* 9 Wis. 450; *Dodge* v. *Burns,* 6 id. 514; *Hitchcock* v. *Railroad Co.* 25 Conn. 516; *Hawley* v. *Harrall,* 19 id. 142; *Felch* v. *Gilman,* 22 Vt. 38; *Embury* v. *Connor,* 3 N. Y. 511; *Barber* v. *Nellis,* 22 Wis. 215.

A railroad right of way may be acquired by adverse possession. Lewis on Eminent Domain, sec. 300; *Gilford* v. *Winnipiscogee Lake,* 52 N. H. 262; *Ray* v. *Fletcher,* 12 Cush. 200; *McCall* v. *Neely,* 3 Watts, 69; *Ryan* v. *Railroad Co.* 62 Miss. 162; *Blair* v. *Railroad Co.* 24 Fed. Rep. 539; *Vail* v. *Mix,* 74 Ill. 127; *Williams* v. *Nelson,* 23 Pick. 141; *Borden* v. *Vincent,* 24 id. 301.

The appellant has acquired title to the lots by adverse possession for over thirty years.

Mr. John G. Manahan, for the appellee:

In a summary proceeding to divest one of his property without his consent, strict compliance must be observed, and no presumption of the regularity or jurisdiction can be invoked in such a proceeding. Cooley's Const. Lim. 528; Dillon on Mun. Corp. 470; 30 N. Y. 470; 55 Me. 61; 20 Ind. 315; 14 Ill. 297; 22 Mich. 104; 47 Mo. 495; 98 Mass. 219.

If the railway company had the right to condemn land for its right of way, it had no right or power to alter the location of River street,—that is, to lay out a public street. This is a political and not a judicial determination. *Railroad Co.* v. *Lake*, 71 Ill. 335; *Galesburg* v. *Hawkinson*, 75 id. 152.

If the void and the valid in the exercise of a power are so inextricably mixed that they can not be separated, the whole must fall together. Cooley's Const. Lim. 178, 179; *People* v. *Cooper*, 83 Ill. 595; *Hinze* v. *People*, 92 id. 424.

In this case, the court had not been called upon to act in a case, the subject matter of which had been confided to it by law. *Railroad Co.* v. *Lake*, 71 Ill. 335.

There is no presumption of payment. It is not like an ordinary judgment for money. The company was not bound to take the land, and until it did, the owner could not enforce payment. Its election to take the land was to be evidenced by the payment of the damages. *Chicago* v. *Barbian*, 80 Ill. 482.

The payment of the damages was an essential factor in appellant's title. It is the payment that confers the right of way. *Railroad Co.* v. *Teters*, 68 Ill. 145; *People* v. *McRoberts*, 62 id. 38; *Bloomington* v. *Miller*, 84 id. 621.

The possession set up by the appellant is defective in various directions. It had not its initiative in either an express or implied claim of title. It is not of the hostile character required to defeat the true owner.

An adverse possession must have its initiative in a claim of title. As title by possession is founded on the Statute of

Limitations, barring entry, it is requisite that its inception be of such a character as to notify the true owner of an adverse claim and invasion of his rights, that he may begin his action. See authorities collated in chapters 48-51, of Tyler on Eject-ment; also Sedgwick & Wait on Trial of Title to Land; *Jack-son* v. *Berner*, 48 Ill. 203; *Rockwell* v. *Servant*, 63 id. 424.

The twenty years' limitation requires a *pedis possessio.* The naked intruder is confined to his actual inclosure or posses-sion. A different rule obtains where the defendant enters under a title. Where possession alone is relied on, it must be a hostile, visible, marked, continuous and actual posses-sion. *Goewey* v. *Urig*, 18 Ill. 240, and cases cited; *Ambrose* v. *Raley*, 58 id. 506; *Bolden* v. *Sherman*, 101 id. 483; *City of Champaign* v. *McMurray*, 76 id. 354.

As stated in *Jackson* v. *Berner, supra:* "Adverse possession sufficient to defeat the legal title, where there is no paper title, must be hostile in its inception, and continue uninterruptedly for twenty years."

Adverse possession is not to be established by inference, but by clear and positive proof, and the possession must be such as to show clearly that the party claims the land as his own, openly and exclusively.

It seems well settled that an adverse right to an easement can not grow out of a mere permissive enjoyment for any length of time. *City of Quincy* v. *Jones*, 76 Ill. 244; *Thomas* v. *Marshfield*, 13 Pick. 240.

Mr. Chief Justice Shope delivered the opinion of the Court:

This was an action of ejectment, brought by appellee, Galt, against the Chicago and Northwestern Railway Company, to recover the possession of the south fifty feet of lots 6, 7 and 8, in block 44, west of Broadway, in the city of Sterling. The suit was brought January 22, 1885. Plaintiff claimed title in fee. The defendant filed the general issue. The trial was had by

the court, without a jury, and resulted in a judgment for the plaintiff, from which the defendant prosecutes this appeal.

Both parties claim title from a common source. The plaintiff below gave in evidence a warranty deed from George H. Wells to Nelson Mason for said lots 6 and 7, dated December 23, 1857, and recorded February 12, 1858; also, a warranty deed from Nelson Mason and wife to plaintiff for lots 6, 7 and 8, dated December 1, 1881, and recorded February 14, 1882. The defendant claimed title under a proceeding to condemn the south fifty feet of the lot, and also interposed the Statute of Limitations.

The claim of title by the defendant to the portions of the lot in controversy is by a condemnation proceeding instituted by the Mississippi and Rock River Junction Railroad Company, in the circuit court of Whiteside county, in 1855. The validity of the judgment and proceeding therein is questioned. On the 25th day of September, 1854, said railroad company filed its petition in the circuit court, addressed to the then presiding judge of that court, asking for the appointment of commissioners to assess the damages to the lands therein named, including the part of these lots in controversy. Upon proof of notice of the application the judge appointed commissioners, who, after being duly sworn, heard the evidence produced by the parties, respectively, viewed the land, and assessed the damages sustained by the respective owners, and reported in writing to the judge of the circuit court. The report recites the order of their appointment, specifies the lands, the name of the owner of each piece, and the damages which the owners of the several parcels of land will sustain by reason of the same being appropriated to the purposes named in the petition. The report finds that George H. Wells is the owner of said lots 6 and 7, and that he will sustain $50 damages. No reference is made in the report to said lot 8, nor are any damages awarded for taking and appropriating the same. Several owners of lands, among whom was said Wells, being dissatis-

fied with the assessment, made application to the judge of the circuit court,—as they might do, under section 7 of the act incorporating the company,—for a modification of the report. Certain modifications were made by the judge, and the report affirmed. Among the tracts thus presented in which the assessment was complained of, were said lots 6 and 7, and in respect of which the following judgment was rendered:

"*Mississippi and Rock River Junction Ry. Co. v. Geo. H. Wells.*

"It is ordered and adjudged by the court, that the assessment of $50 to said Wells, for and by reason of the appropriation by said company, for the use of said railroad, and for the alteration of River street, for that part of lots 6 and 7, in block 44, west of Broadway, in Sterling, the property of said Wells, which lies within fifty feet of the south line of said block, be and is hereby approved and confirmed. Whereupon, it is ordered and adjudged by the court, that the said Wells have and recover of said company the said $50 damages, together with his costs in and about this suit expended, and that he have execution therefor. And the said report, as herein above modified, is accepted, approved and confirmed, and it is ordered that said report, with this order modifying and accepting the same, be entered of record in the said court."

The authority of the railroad company to appropriate private property for the use of the railroad is found in section 7 of the charter of that company, approved February 15, 1851. After giving the company power to purchase and receive and hold such real estate as might be necessary and convenient in accomplishing the purposes of its incorporation, that section provides that the company "may, by their agents, engineers and surveyors, enter upon and take possession of and use all such lands and real estate as may be necessary and indispensable for the construction and maintenance of said railroad, and the appendages and accommodations requisite and appertaining thereto. * * * But whenever any lands, real estate or material shall be taken and appropriated by such corporation for

the location and construction of said railroad or its append-ages, or any work appertaining thereto, and the same may not be given or granted to said corporation, or the proprietor or proprietors do not agree with said corporation as to the amount of damages or compensation which ought to be allowed and paid therefor, or shall not mutually agree upon some person or persons to appraise the same, the damages shall be estimated and assessed in the manner following," etc. The section then provides for the appointment of commissioners, the manner in which they shall discharge their duty, that a record shall be made of their report, with the order of the court thereon accepting or modifying the same, and that upon the payment of the damages assessed, if any are assessed, and the expenses of the assessment, the corporation shall become seized of said lands and property, and entitled to the use of the same "for the purposes aforesaid." (Sess. Laws, 1851, pp. 254-258.) No power is given by the charter to condemn land for a public street. The words of its charter, that the company "may, by their agents, engineers and surveyors, enter upon and take possession of and use all of such lands and real estate as may be necessary and indispensable for the construction and main-tenance of such railroad, and the appendages and accommo-dations requisite and appertaining thereto," give power to take land for railroad purposes only.

It would seem that the railroad company had determined to locate its road along River street in the city, and in order to furnish an equivalent to the public for the street so taken, desired to move the street fifty feet farther north, upon and along block 44, and certain blocks to the east and west thereof. The petition of the railroad company states that the parts of lots 4, 5, 6, 7, 8 and 9, in block 44, are "needed by said com-pany for their right of way and for the alteration of River street in said town of Sterling, being all that part of said lots lying within fifty feet of the south line of said block." And the petition asks for the appointment of commissioners "to

assess such damages as the several persons above named will severally sustain by reason of the appropriation of said land belonging to the said several persons before named, as above described, for the construction of the said railroad and its appendages, and for the other purposes named in said petition." In the report of the commissioners it is stated they have assessed damages "for the purposes therein specified."

It is apparent that the proposed condemnation was for other than railroad purposes. It was sought for the purpose of making a public street in the town of Sterling, in the place of one appropriated by the railway company for its right of way. This, we are of opinion, was without authority of law. The municipal authorities of the town had, by its charter, exclusive jurisdiction of the streets, and power to grant the company the right to lay its tracks therein, and if, in consequence of such grant or privilege, it became necessary to appropriate real estate for the purpose of widening or altering the street, the town authorities alone had the power to appropriate the lands necessary therefor, by making just compensation. The railway company had power to condemn land for the uses granted in its charter, but none whatever to lay out a public street, or to change the location of one already established. Nor had the circuit judge any jurisdiction or authority to lay out a street within the incorporated town, in any event, and the attempt so to do, or to take the land of the citizen therefor, was abortive and a nullity. It can not be said that the condemnation was good for the right of way, and void for the purpose of changing the location of the street. The two purposes for which the condemnation was made are so inseparably connected in the petition, report and judgment, as not to be capable of severance. The condemnation was not for a single purpose. It was no more for the right of way of the company than for the alteration of the public street. There is nothing in the proceedings to indicate that any particular part of the land sought to be taken was for railway purposes, and another part thereof

for the street sought to be laid out and substituted for River street, but the whole south fifty feet of the lots was sought to be condemned for two distinct purposes,—one within the power conferred upon the company, and the other not. Such a proceeding is not authorized by law, and can not be tolerated in a summary proceeding by which the citizen is deprived of his property rights. Lewis on Eminent Domain, (sec. 600,) says: "The power to force a man to give up his property against his will, and for a consideration fixed by others, is one which is, in its nature, harsh, and against common right. According to all analogies of the law, such a power, to be effectual in its exercise, must be strictly pursued. This has been repeatedly held with respect to the power of eminent domain."

To put the court in motion, and give it jurisdiction in condemnation proceedings, a petition is, in general, necessary, and must be in conformity with the statute granting the right of condemnation. It should set forth, by appropriate averments, all such facts as are necessary to authorize the tribunal to act. (*Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Bailey* v. *McCain,* 92 id. 277.) It is thus stated by Mr. Lewis, (sec. 53): "The petition should show the use or purpose for which the property is desired, and that it was within the statutory powers conferred. It should show a clear right to condemn the property described. Accordingly it must not only show that the property is wanted for a public use, but also that it is for a use that is within the particular statute under which the proceedings are had." It is true that both purposes for which the condemnation was sought were public uses, but the use for a public street was not within the statute authorizing the proceedings by the railroad company, and could not be made the basis of such proceeding. Under such a petition as is presented, the court could not condemn the whole or any part for right of way. The use for which the property was desired was not divisible.

We are constrained to hold that the court acted without jurisdiction, and that its judgment was unauthorized and void. In the exercise of special statutory jurisdiction, the court or judge exercising it may be regarded as an inferior tribunal, and possessing no power not specially given by the statute, and, therefore, irregularities in the proceeding may be taken advantage of collaterally. The same author from whom we have before quoted, (sec. 603,) says: "The jurisdiction exercised in condemnation cases is always of a special character. The proceedings are to be conducted according to a certain prescribed mode. It is plain, therefore, that even after the court or tribunal has acquired jurisdiction in the case, errors may be committed which will render the proceeding void. The jurisdiction acquired is simply a jurisdiction to proceed to final determination of the case in the mode provided by law. Any material departure from that mode will be fatal to the proceedings."

It is undoubtedly true that an erroneous decision in a matter which the tribunal has power to decide, can not be taken advantage of collaterally, but the authority must be strictly followed, and jurisdiction to condemn property for the uses of a railroad has never been held to justify its condemnation for the purposes of a street. By the common law, in proceedings in courts of inferior jurisdiction, or in any court exercising a special statutory power, the record should show, affirmatively, all the facts necessary to give jurisdiction, and that the proceedings have been according to law. (Ibid. 604; Cooley's Const. Lim. 528; Dillon on Mun. Corp. 470.) As before seen, it can not be told whether the fifty feet of the lots mentioned were necessary for the right of way of the railroad, and the appendages and accommodations requisite and appertaining thereto, or not, or what portion was intended to be condemned for the use of a public street. The uses are inconsistent with each other. That for the use of the railroad company would be exclusive, and the public would acquire thereby no right of

enjoyment of the property condemned. If condemned for a public street, the right would be in the public to the exclusion of the railroad company.

In respect of lot 8, in block 44, the report of the commissioners fails to show any assessment of damages, or any determination by the commissioners in respect thereof. That lot seems to have been overlooked, or dropped from the case. Whether this may be regarded as a finding that there were no damages to such lot, as has been sometimes held, it is not necessary to decide, for other reasons which we think invalidate the proceedings to condemn.

But if the application for condemnation had been legal, it will be seen from the foregoing citations from its charter that the company was not authorized to take possession of the property, nor did it acquire any right therein before payment of the damages assessed. There is no proof that the damages assessed were paid; but it is said that payment will be presumed after the lapse of more than twenty years, and *McCormick* v. *Evans*. 33 Ill. 337, and other cases, are relied upon as sustaining that view. The presumption of the payment of a debt or judgment will ordinarily be indulged after the lapse of twenty years, but we do not think such presumption obtains here. The judgment in a condemnation proceeding is not such a debt or judgment as may be collected by execution, unless possession is taken of the property condemned. Before then it bears no interest. The party condemning can not be compelled to pay the same. He may abandon the proceeding. It is only after acceptance and possession taken that the judgment becomes absolute. If the railway company in this case had taken possession of the land, built its road thereon, and over twenty years had since elapsed, payment of the judgment might be presumed. The proceedings to condemn, however, are summary and *in invitum*, and in such cases no presumptions are indulged by the courts in favor of the regularity and validity of a proceeding to deprive the citizen of his property

without his consent. The condemning railway company never took possession of the land, and there is no evidence in the record that it ever elected to take any part in these lots, or placed itself in a position to be called upon for the damages assessed. In *Chicago* v. *Barbian*, 80 Ill. 482, it was held that no order or judgment can be entered, of binding force, on an application to condemn land for right of way, so as to confer a present right to take or damage the property before payment of the compensation found, and that all that can be done is to enter a judgment or order vesting the right to take or damage the property for the use contemplated, upon the performance of the condition precedent of paying the compensation fixed. It was also there held, that where land is condemned for a public use, and the condition of the order is not complied with within a reasonable time, by the payment of the damages and taking possession of the property, the proceeding may be regarded as abandoned, and a court of equity would inhibit any attempt to proceed under the same. In this case the court may as well presume that the company seeking to condemn abandoned its proceeding, as to presume payment.

The second ground of defense urged is, that the right of recovery has been barred under the Statute of Limitations. There is no proof that the Mississippi and Rock River Junction Railway Company ever had possession of the property in question. In July, 1855, the Chicago and Galena Union Railway Company, in constructing its road, took earth for its track off of the south fifty feet of these lots. This, at most, may have been the act of a mere trespasser—so far as shown, a trespass on the part of the contractors in building the road. The latter company was in 1864 consolidated with appellant company. It is not claimed that said railroad, or that appellant (defendant below), has or had any paper title to the land, and without such title the possession, if any, would be limited to the extent of its actual possession. The proof shows that the defendant piled railroad ties and other material on some parts of the

lots, but it does not appear that such acts were done under the claim of ownership until about the time that the plaintiff purchased the property of Wells, as before stated, about which time the company fenced the land. No attempt has been made at any time to use the land for right of way or for other railroad purposes. An adverse possession sufficient to defeat the title of a true owner, in the absence of color of title, must be hostile in its inception, and continue uninterruptedly for twenty years. It is requisite that it should be of such character as to notify the true owner of an adverse claim and invasion of his rights. *Jackson* v. *Berner*, 48 Ill. 203; *Rockwell* v. *Servant*, 63 id. 424; Tyler on Ejectment, chaps. 48-51, and authorities collated.

We have carefully considered the evidence, and think that while appellant's possession might be sufficient now, and perhaps for some years, to enable it to maintain an action against a mere intruder, it fails to show such adverse possession for the period of twenty years as will bar this action. Mere acts of trespass upon vacant and unenclosed land, not amounting to an exclusive appropriation thereof, and not made under a *bona fide* claim of ownership, or under circumstances indicating such a claim, do not constitute an adverse possession, within the meaning of the limitation laws. Such adverse possession can not be inferred, but must be proved. (*McClellan* v. *Kellogg*, 17 Ill. 498; *Ambrose* v. *Raley*, 58 id. 506.) In addition to its being hostile in its inception, and its continuance uninterrupted for the period, it must be actual, visible and exclusive, acquired and retained under claim of title inconsistent with that of the true owner. *Illinois Central Railroad Co.* v. *Houghton*, 126 Ill. 339.

We are of opinion that the judgment of the circuit court must be affirmed.

*Judgment affirmed.*

Subsequently, after a petition for rehearing had been granted, the following additional opinion was filed:

Per CURIAM: Having, on petition of the appellant, ordered a rehearing in this case, and additional briefs having been filed, we have carefully reconsidered each of the various grounds upon which the appellant seeks a reversal of the judgment. After giving due weight to all the suggestions of counsel, we are brought to the same conclusion as before. It will therefore be unnecessary for us to enter upon any further discussion of the case, or to add anything to what we said in the opinion already filed. That opinion is re-adopted, and for the reasons therein stated, the judgment of the circuit court will be affirmed. *Judgment affirmed.*