## THOM v. GEORGIA MANUFACTURING AND PUBLIC SERVICE COMPANY.

1. The evidence in this case upon the controlling issues was conflicting; and it not appearing that the judge of the superior court abused his discretion, his judgment refusing to grant an interlocutory injunction should not be disturbed.

2. The mere recital in the bill of exceptions that, after the hearing of the cause, the judge permitted the defendant to file an amendment to its answer, of which the plaintiff did not have notice until after the deci-

sion of the judge was rendered, raises no question for decision by this court, where the bill of exceptions contains no assignment of error upon the action of the judge in receiving the amendment and permitting it to be filed.

Argued November 6, 1906.—Decided April 15, 1907.

Petition for injunction.   Before Judge Gober.   Cobb superior court.   July 25, 1906.

This was a petition to restrain the defendant from proceeding to condemn certain land, the property of the plaintiff, to be used by the defendant for the purpose of backing water upon it by a dam about to be constructed.   The defendant had instituted condemnation proceedings as a waterworks company, under the Civil Code, §2407-9.   The plaintiff based his petition for injunction upon the grounds, among others, that the defendant is seeking, under the guise of condemnation proceedings, to take his property for its private use; that the amount of water supplied by it for the public use is very small compared with the amount which it has the capacity to furnish, and which it does furnish for its own private use for its new paper-mill, which is wholly disconnected from any public use whatever; that the parcel of land sought to be condemned is not useful or necessary to the defendant in the maintenance and operation of its waterworks for the public use, because the capacity of its waterworks far exceeds that needed for such purpose; that the defendant's system of waterworks has been completed and in operation for the past eleven years, the same being situated on Rotten Wood Creek, about two and one half miles southeast of Marietta, while the land of the plaintiff is sought to be condemned for the purpose of getting water from a different stream, situated about two miles from the stream which now furnishes its supply of water; that the defendant purchased said waterworks from the Marietta Water Works company, and that company, having constructed said system eleven years ago, elected to acquire for such purpose the property now in use, and it is bound by such election, and its charter rights were thereby exhausted, and it had no further right of eminent domain to hand down to its successor in title; therefore the defendant has no power to re-exercise the right of eminent domain.   The petition further alleges, that the defendant allowed large quantities of water at its pumping station to escape, which if utilized would furnish more

water than it could use; that the defendant is about to construct a dam, and that a dam of so great a height is not necessary; also that there is another available location for a dam near its present pumping station, which if used would obviate the necessity of taking the property now sought to be condemned.

The material allegations of the petition are denied by the defendant's answer; in which it alleges that it has some three hundred and twenty regular customers who take water from its system of waterworks; that these customers include the city of Marietta, the county of Cobb, and a large portion of the private citizens of said city; that owing to the increase of population in and about Marietta, defendant's supply of water is inadequate to meet the public demand upon it, and that it is for the purpose of meeting the increased demands of its customers that the proposed extension of its plant is to be made. It admits owning and operating a paper mill in connection with its waterworks plant, and that it has recently increased the paper-mill, but alleges that, owing to improved methods in the manufacture of paper, it will not require a proportionately larger supply of water therefor, and that "it is not true that the object and purpose of defendant in increasing its waterworks is simply for its own use in its paper-mill." Numerous affidavits in support of the allegations of the petition and answer were filed by the plaintiff and the defendant respectively. The judge, after hearing the evidence, refused the injunction prayed; and the plaintiff excepted.

*J. Z. Foster* and *J. E. Mozley,* for plaintiff.

*D. W. Blair, N. A. Morris,* and *Atkinson & Born,* for defendant.

BECK, J. (After stating the facts.)

1. The Civil Code, §2407, provides that "corporations, companies, partnerships or individuals, constructing, owning, operating or carrying on waterworks in this State, shall have the right, power, privilege and authority to lease, purchase or condemn land, receive donations, grants, easements or other uses of land for the purpose of constructing and carrying on waterworks in this State." And section 2408 provides that "In the event that any of the above-recited corporations or individuals do not procure from the owners thereof, by contract, title to the land necessary or proper for the construction and successful operation of waterworks, and the parties can not agree upon the damage done, the same shall be assessed

as provided in this code." It is obvious, from the plain terms of the above sections of the code, that the legislature has conferred upon corporations and individuals operating a system of water-works the privilege of exercising the right of eminent domain, whenever the exercise of that right is essential to acquire land nec-essary to effectuate its legitimate purposes. And when the legisla-ture grants to a corporation, or to corporations of a given class, the right to exercise the right of eminent domain, the legislature alone is the judge of the necessity for the exercise of the right, under such limitations as may be imposed upon it by the constitution. *Savannah Ry. Co.* v. *Postal Tel. Co.,* 115 *Ga.* 559. And the con-stitutionality of the act embodied in the above sections of the code is not questioned by the plaintiff in this case.

Where the authority to exercise the right of eminent domain is conferred by the legislature upon corporations of a given class, and a particular corporation is undertaking the exercise of that right, under proper proceedings a court may inquire as to whether that particular corporation is within the class to which it claims to be-long. And that very question was raised and adjudicated, under proper pleadings, supported by evidence, in the present case. There was evidence authorizing the judge to find and hold, that the defend-ant was a waterworks company, operating a system of waterworks, and that the acquirement of the land sought to be condemned was essential in order to meet contracts which it already had with pri-vate individuals and with the public, and that it was necessary under the provisions of section 2409 of the code; that it had a contract, bona fide entered into, with the proper authorities of the city of Marietta, and that this was the main purpose for which it desired to condemn and acquire other land which would be cov-ered by water that would be backed by a new dam, the construction of which was contemplated; that it was needful on account of the progress and growth of the city, whose inhabitants it proposed to furnish with water, as well as to meet an increased demand made upon it by the municipality itself, with which it already had a bona fide contract for the supply of a large quantity of water. All of these contentions of the defendant were put in issue by the plead-ings and by the evidence, and the plaintiff made the further issue that, however great the supply of water necessary for the public uses, after all, the satisfaction of the public was not the main pur-

pose to be met in the construction of the new dam, but that the real purpose and object of the defendant in seeking to obtain a new supply of water was to meet its own needs and requirements in the operation of a paper mill, the private property of the defendant. And upon this last issue raised, as well as upon the other issues, the evidence was conflicting; but that submitted by the defendant was sufficient to authorize the judge hearing the case to find in favor of the defendant. And upon contested issues of fact, the evidence being conflicting, the finding of the judge who hears the case is conclusive.

The fact that the Marietta Water Works Company, the defendant's predecessor in title of a part of its properties and franchises, or the defendant itself, had formerly, by condemnation proceedings or by purchase, acquired lands upon which reservoirs, pumping station, and other accessories of a waterworks plant had been constructed, would not, if the needs and exigencies of a growing city, with whose municipal authorities and with whose inhabitants it had contracts for furnishing water, rendered the supply inadequate, prevent its acquiring other lands, to be overflowed by the water of another reservoir, created by a different dam. "A single exercise of the power of condemnation does not exhaust it, if a future exercise of the power becomes necessary to accomplish the objects for which the corporation was chartered. Thus the power to condemn private property, conferred by the charter of a railroad company, is not exhausted by its first exercise, but is coextensive with the necessities to meet which it was granted. But the power must be exercised within the time limited by the charter of the company, if there be a limitation." 15 Cyc. 576, and cases cited. While this doctrine may be subject to certain modifications and restrictions, especially in the case of those corporations having for their purpose the construction and building of railroads, it should not be unreasonably contracted when it is sought to be invoked in cases involving the question now presented for consideration. As a part of the history of the State and its development, we know that there are towns and cities whose needs, so far as a supply of water is concerned, could have been satisfied ten years ago by a plant capable of furnishing one or two hundred thousand gallons per day, which now require over half a million gallons daily.

In the case of Johnson *v.* Water Works Co., 67 Barb. (N. Y.) 415, the doctrine is broadly stated to be that a waterworks company chartered to supply a city with water may condemn new land and springs as often as the necessities of the city may require it. "In Bruce *v.* Delaware and Hudson Canal Co. (19 Barb. 376,) a question was presented to the court in respect to the power of the company to acquire additional lands, and to make additional excavations to deepen their canal, rendered necessary after its completion, by an increased demand for its use, to effect the purpose of its construction and incorporation. The court says: 'The question is to be determined in reference to the object which the legislature contemplated when they granted to the defendant their charter. . . . They were to construct and forever maintain a canal whose capacity should be suitable to this object.' After stating a series of expenditures which had been made, to increase the capacity of the canal (and the like fact appears in this case), Harris, J., adds: 'There is nothing in the language of the charter which leads me to suppose that the legislature intended that the defendant should, *once for all,* determine the size of their canal, and that, having constructed it of the limited dimensions first adopted, they should not be at liberty, whatever the necessity, *subsequently to* enlarge it.'" Johnson *v.* Water Works Co., 67 Barb. 420.

There is no language in either of the sections of the code quoted above (and within the provisions of which the defendant claims to be) limiting or hinting at a limitation of the rights of a corporation or individual, within the provisions of the statute, to acquire lands by condemnation, to one instance, or limiting the extent of the acquisition other than to the purposes contemplated. But in passing upon the defendant's right to taking in the first instance, or acquiring lands a second or later time, the basic principle must not be disregarded, and that is that the taking in each instance must be necessary for a public purpose. Randolph, Em. Dom. 185, 186. It is incumbent upon the corporation or individual seeking to exercise the right of eminent domain to show both the necessity and the purpose. If it appear that the alleged public purpose is merely collateral, and that the real, essential purpose is to acquire lands and streams needful and to be used for the purpose of carrying on a private business enterprise, though the public use might be subserved incidentally, then the taking would not be

permitted, but if, on the other hand, the proposed taking is bona fide and essentially for public purposes, though it be contemplated that in part the property taken shall incidentally be used in a private enterprise, such a taking would not necessarily be obnoxious to any constitutional provision.   10 Am. & Eng. Enc. of Law (2d ed), 1065, and cases cited.

3. It was argued in the brief of counsel for plaintiff in error that the judgment of the court below should be set aside because the defendant was permitted, after the hearing of the case and before the decision was rendered, to file an amendment which was sworn to, and of which neither plaintiff nor his counsel were given notice.   But no exception to the judge's having received and considered this amendment appears to have been made in the bill of exceptions, and, therefore, the question sought to be made in the brief of counsel is not properly made for decision.

*Judgment affirmed.   Fish, C. J., absent.   The other Justices concur.*