ROGERS *et al. v.* TOCCOA ELECTRIC POWER COMPANY.

ATKINSON, J. 1. The Civil Code (1910), § 2823, par. 1, relating to the power of the superior courts to create corporations, provides: "The persons desiring the charter shall file, in the office of the clerk of the superior court of the county in which they desire to transact business, a petition or declaration specifying the object of their association, and

the particular business they propose to carry on, together with their corporate name, and the amount of capital to be employed by them actually paid in, and their place of doing business, and the time, not exceeding twenty years, for which they desire to be incorporated; which petition or declaration shall be published once a week for four weeks in the nearest public gazette to the point where such business is located, before said court shall pass an order declaring said application granted." Certain petitioners for charter of a corporation under this law alleged that they desired to be incorporated "for a period of thirty (30) years." The petition was published in the manner and for the time provided by law, after which the court allowed an amendment to the petition striking "thirty (30)" and inserting in lieu thereof "twenty (20)." With the petition thus amended, the court issued an order purporting to charter the corporation for a term of twenty years. *Held*, that the order of incorporation was not void on the ground that it was not based upon an application that had been published as required by law. *Redwine* v. *Gate City Loan & Building Asso.*, 54 *Ga.* 474; *Van Pelt* v. *Home Building & Loan Asso.*, 79 *Ga.* 439 (2) (4 S. E. 501).

2. The defendant, Toccoa Electric Power Company, is a successor in title to Toccoa Power Company. The latter company inaugurated the construction of a dam as a part of a hydro-electric plant, and instituted proceedings to condemn certain lands that would be submerged by the back waters from the dam. The persons who are plaintiffs in the present action instituted suit to enjoin said condemnation proceedings. The case came to this court; and it was held that the charter of that company was void and that the company could not exercise the power of eminent domain. 161 *Ga.* 524 (131 S. E. 517). After that decision the trial court permanently enjoined the Toccoa Power Company as prayed. Shortly afterward a majority of the officers and directors of the company proceeded to organize the Toccoa Electric Power Company under a different charter, and the latter company took over the properties, contracts, liabilities, and work of the Toccoa Power Company and proposed to exercise the power of eminent domain. *Held*, that the defendant as a corporation is not bound by the judgment in the former case. *Bradley* v. *Lithonia & Arabia Mountain Railway Co.*, 147 *Ga.* 22 (92 S. E. 539).

3. The petitioners for charter of the Toccoa Electric Power Company, except one, were non-residents of this State. This fact of non-residence will not give character to the corporation, thereby making it a foreign corporation.

4. The authorized capital stock was $100,000, divided into 1,000 shares. When the stock was issued the Tennessee Electric Power Company, a foreign corporation that was financing the enterprise, became owner of 995 shares of the capital stock. Officers of the latter company, except one, were the petitioners for charter of the Toccoa Electric Power Company, and constituted its first board of directors and corporate officials. The business of the corporation, as declared in the petition for charter, was "to acquire, erect, maintain, and operate works, plants, and transmission lines, for generating and supplying electricity to the public for light, heat, and power, and for the purpose of supplying electricity for lighting towns and cities and supplying motive power to railways, street

and electric railways, manufacturing plants, and any and all other users of electricity." A resolution of the board of directors, authorizing construction of the dam, declared the purpose of the corporation to be "generating electricity by water-power to be used· for the purpose of lighting towns and cities, and . . supplying motive power to railroads and street-car lines, and . . supplying light, heat, and power to the public, as provided by and in accordance with the laws of the State of Georgia." The location of the dam was in a sparsely settled mountainous section of Fannin County, Georgia, near the line of Tennessee. There were no near-by cities in the State of Georgia, the only near-by towns in this State being Blue Ridge, McCaysville, and Morganton. The Toccoa river flows out of Georgia into Tennessee, and becomes Ocoee river after entering the latter State. The contemplated dam will be 170 feet high, and will cause backwater in Georgia for a distance exceeding eleven miles, submerging improved and unimproved lands of other proprietors along the river and a section of a principal State highway including the bridge on that highway. The anticipated horse-power is 22,000. The estimated electric power that would be produced is about 35,000,000 kilowatt hours annually. The towns of Blue Ridge and McCaysville would consume about 25,000 kilowatt hours annually, if they should become users of the power. If there should be a demand for more power in Georgia by the establishment of manufactories or for other cause, the company would supply it; but the present intention is to deliver, by means of power lines now being constructed, the whole power not used in Georgia to the Tennessee Electric Power Company, by "feeding" it into a transmission system of that company at the State line. The latter company has its offices in the State of Tennessee and numerous electric plants, some operated by water and some by steam, and by its transmission system supplies numerous cities and towns in Tennessee and elsewhere with electric power. Included among its patrons are the Georgia Electric Power Company, a public service corporation of this State, and the town of McCaysville in this State. *Held:*

(*a*) The Toccoa Electric Power Company has, by virtue of the provisions of the general law (Civil Code of 1910, § 5240), authority to exercise the power of eminent domain for the purpose of acquiring; under statutory proceedings, land that would be submerged by the back waters from the dam. *Nolan* v. *Central Georgia Power Co.,* 134 *Ga.* 201 (4) (67 ·S. E. 656); *Jones* v. *North Georgia Electric Co.,* 125 *Ga.* 618 (54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526).

(*b*) Whether a purpose is a public or private purpose within the meaning of the law relating to eminent domain does not depend on use by the public or the amount of use, but upon the right of the public to such use. *Bradley* v. *Lithonia & Arabia Mountain Railway Co.,* supra.

(*c*) If having the power of eminent domain based on a right of public use in Georgia of electric power produced at its plant, the Toccoa Electric Company would not lose such power because it also furnished electric power in Tennessee. *Carnegie Natural Gas Co. v. Swiger,* 72 W. Va. 557 (79 S. E. 3, 46 L. R. A. (N. S.) 1073); *Columbus Water Works Co. v. Long,* 121 Ala. 245 (25 So. 702).

(*d*) Nor would it lose such power because the Tennessee Electric Power

Company, acting through others in Georgia, had promoted the incorporation and organization of the Toccoa Electric Power Company, taking unto itself the bulk of the capital stock carrying the voting power.

(e) The case upon its facts presents no exception to the general rule recognized in this State, that there is a separate legal entity of a corporation distinct from its stockholders. *Central of Georgia Railway Co.* v. *Central Trust Co.*, 135 *Ga.* 472 (69 S. E. 708).

5. The act approved August 22, 1925 (Acts 1925, p. 272), granting powers of eminent domain to water-power companies, expressly provides that such companies may acquire by "condemnation the right to flood public roads or highways." It is suggested in the brief of the attorneys for the plaintiffs that this provision of the act is unconstitutional; but no constitutional question was made before the trial court.

6. The trial court did not err in refusing to enjoin exercise of the power of eminent domain.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Beck, P. J., who dissent, and Hill, J., absent because of illness.*

No. 5460.    MARCH 5, 1927.

Petition for injunction. Before Judge Tarver. Fannin superior court. April 5, 1926.

*Morris, Hawkins & Wallace, Watkins & Asbill, T. H. Crawford,* and *Thomas A. Brown,* for plaintiffs.

*Maddox, Matthews & Owens* and *William Butt,* for defendant.

RUSSELL, C. J. I dissent from the judgment affirming the judgment of the lower court. I agree in the main with the conclusions reached by the majority of the court, but I am of the opinion that some of the exceptions upon which the majority affirm the ruling of the lower court afford grounds for reversal. For that reason I dissent from the first headnote, in which it is held that the order of incorporation in the present instance is not void in that it was based upon an application which had not been published as required by law. I see a wide distinction between the facts in *Redwine's* case, 54 *Ga.* 475, and *Van Pelt* v. *Home Building & Loan Asso.,* 79 *Ga.* 439 (2) (supra), and the fact appearing in this record that the application as published was for a charter which should continue for thirty years. In the cases cited the court very properly, I think, ruled that an application for charter which otherwise was conformable to law might be so amended as to state the precise objects of the incorporation. But since the court's power to convey charter privileges is confined by law to a period of twenty years, and as the court has no power to grant a charter for a period of thirty years, the entire application itself would be a nullity, and the court without power to amend it. It has been

held in Kohl *v.* United States, 91 U. S. 367 (23 L. ed. 449), that the right of eminent domain is a right belonging to a sovereign to take private property for its own public uses, and not for the uses of others; and I must bear in mind the holdings of this court in conformity therewith, where we have decided that real property already condemned under the doctrine of eminent domain for the use of one public service corporation could not be again subjected by an exercise of the right of eminent domain to the uses of another such corporation. Furthermore, "a corporation chartered under the laws of another State can not exercise the right of eminent domain in this State without the consent of the legislature expressly given." *Chestatee Pyrites Co.* v. *Gold Co.,* 119 *Ga.* 354 (46 S. E. 422, 100 Am. St. R. 174). It is plain to me that the Toccoa Company is a mere dummy of the Tennessee Electric Company.

BECK, P. J. I can not concur in the judgment of affirmance in this case. I do not differ greatly with the majority as to the general principles stated in headnotes 4 (*b*) and (*c*); but viewing the principle there stated in the light of the uncontradicted facts in this case, it leads to a conclusion that is not authorized under the established principles underlying the right of eminent domain. "The proper view of the right of eminent domain seems to be that it is a right belonging to a sovereignty to take private property for its own public uses, and not for those of another. Beyond that, there exists no necessity; which alone is the foundation of the right." Kohl *v.* United States, 91 U. S. 367 (supra). In the case of Grover Irrigation &c. Co. *v.* Lovella Ditch &c. Co., 21 Wyo. 204 (131 Pac. 43, Ann. Cas. 1915D, 1207), the Supreme Court of Wyoming said: "The right of eminent domain can not be exercised to acquire property rights in aid of an enterprise for the irrigation of lands in another State, notwithstanding there may be incidental benefits to residents of the State where the property sought is situated by creating a new channel for the employment of capital and labor." The Supreme Court of Alabama says: "It seems to be an admitted fact generally that the power inheres in a State for domestic uses only, to be exercised for the benefit of its own people, and can not be extended merely to promote the public uses of a foreign State." Columbus Waterworks Co. *v.* Long, 121 Ala. 245. And in Lewis on Eminent Domain, § 310, this doctrine

is stated: "The public use for which property may be taken is a public use within the State from which the power is derived." These principles are recognized and restated in numerous decisions collected and discussed at length in the case of Grover Irrigation & Land Co. *v.* Lovella &c. Co., supra. See, in this connection, *Thom v. Ga. Mfg. Co.*, 128 *Ga.* 187 (57 S. E. 75). It is also a recognized principle that the fact that a neighboring State may incidentally partake of the fruits of the exercise of the power of eminent domain will not be ground for enjoining the exercise of the right of a corporation which has been vested with that right. But in this case it plainly appears that the citizens of the State of Georgia, which has vested the corporation here in question with the right of eminent domain, will not enjoy more than an insignificant part of the fruits of the exercise of that power. The service to the citizens of Georgia will be incidental, while the main purpose is to produce electrical power which will be delivered to a foreign corporation in a foreign State and there used as it may see fit, so far as the courts of this State can determine. The fact that the power produced and transmitted to the control of the Tennessee corporation in Tennessee may be retransmitted to a Georgia public-service corporation can not affect the case, because the retransmission of the power from Tennessee will be dependent upon the will and determination of the Tennessee corporation as to the use it will make of the power transmitted to it, and its determination of that question can not be controlled by any Georgia authority.