## KESSLER *v.* CITY OF INDIANAPOLIS ET AL.*

### [No. 24,831. Filed July 19, 1927.]

1. EMINENT DOMAIN.—*Appellate Court may inquire as to actual "use" for which property is intended.*—In an eminent domain proceeding courts are not limited to consideration of whether the use assigned therein is a public use, but may inquire whether the actual "use" for which the property is to be taken is or is not a public use, and consideration may be given to all the surrounding facts and circumstances tending to show what was the actual and real use to be made of the property. p. 426.

2. EMINENT DOMAIN.—*Reviewing Court may inquire into purpose of eminent domain proceeding as distinguished from motives of acting officials.*—In an eminent domain proceeding by a municipality, the court may inquire into the *purpose* of the proposed taking as distinguished from the motives of the officials in taking such action. p. 426.

3. EMINENT DOMAIN.—The purpose for which private property is condemned is the very basis of the right to condemn. p. 426.

4. EMINENT DOMAIN.—The power of eminent domain may be exercised only for a public purpose, as the taking of private property for a private use would violate the constitutional rights of the owner. p. 427.

*Reported and annotated, 53 A. L. R. 1.

5. EMINENT DOMAIN.—The power of eminent domain cannot constitutionally be delegated for an essentially private purpose, even though a public purpose will be incidentally served thereby. p. 427.

6. EMINENT DOMAIN.—*Incidental private benefit does not destroy public character of use of property condemned.*—A proposed use of property sought to be condemned which is in itself of a public character justifying the exercise of the power of eminent domain does not lose its character as such by the fact that the use will incidentally result in a private benefit. p. 427.

7. EMINENT DOMAIN.—*Power of eminent domain cannot be exercised for a private purpose.*—Where the intention to confer a private use or benefit forms the purpose, or a part of the purpose, of a proceeding to appropriate land, the power of eminent domain may not be exercised, unless the private purpose can be separated from the public purpose, and the power exercised only for that purpose. p. 427.

8. EMINENT DOMAIN.—A city may not exercise the power of eminent domain to take private property for the benefit of an individual where such intent forms an inseparable part of the purpose of the taking. p. 427.

9. EMINENT DOMAIN.—*Evidence held to show private purpose in condemnation proceeding.*—Evidence *held* to show that intent of city in condemnation proceeding was in part for the purpose of affording an adjoining landowner access from his lot to a boulevard and therefore for a private purpose and invalid. p. 427.

10. TRIAL.—*In passing on defendant's motion for judgment on the evidence, only evidence supporting the complaint should be considered.*— In passing on defendant's motion for judgment (which is in the nature of a demurrer to the evidence), the court should consider only the evidence tending to sustain the complaint; such a motion admitting, for the purpose of the determination, that the facts shown in plaintiff's evidence are true. p. 429.

11. EMINENT DOMAIN.—*Power of eminent domain may not be exercised for private use or benefit if the public use is merely contingent and prospective.*—In a condemnation proceeding, if the proposed public use is contingent and prospective, and a private use or benefit is actual and present, the public use would be incidental to the private use and the power of eminent domain could not lawfully be exercised. p. 429.

12. INJUNCTION.—*Purpose of condemnation proceedings determines right of municipality to appropriate property.*—A permanent injunction should not be rendered which would forever prevent a city from appropriating specific property which may be needed for future public improvements even though an injunction to restrain condemnation proceedings under an ordinance whose purpose is to procure private benefit is proper. p. 430.

From Marion Superior Court (A 23,495); *Linn D. Hay*, Judge.

Suit by Rose M. Kessler against the city of Indianapolis and another to enjoin the city from proceeding with a condemnation proceeding to appropriate plaintiff's property. From a judgment for the defendants the plaintiff appeals. *Reversed.*

*Frank C. Dailey, Samuel D. Miller, William H. Thompson, Albert L. Rabb, Thomas D. Stevenson* and *Perry E. O'Neal*, for appellant.

*Telford B. Orbison*, for appellees.

MARTIN, J.—Appellant sued to enjoin the city of Indianapolis and its board of park commissioners from taking, under the power of eminent domain, a triangular strip of ground, 163 feet long and containing .073 acres, abutting on the Pleasant Run parkway, within said city, and constituting the north part of a lot owned by appellant.

In 1911, the strip of ground was conveyed to the appellee city by appellant's remote grantor, "for parkway and boulevard purposes and for such purposes alone," with a provision in the conveyance that if it should, in the future, "be abandoned or cease to be used for such purposes," it should "thereupon immediately revert." Prior to May 10, 1923, the course of the boulevard was changed because of the construction of a new bridge over Pleasant Run, and as a result of such relocation, the triangular strip of ground was left vacant and unused. On that date, the board of park commissioners, by resolution, abandoned said strip and turned it back to appellant, who thereupon fenced it in and planted shrubbery upon it.

Appellees do not dispute appellant's points that a determinable fee was vested in the city, *Aldred* v. *Sylvester* (1915), 184 Ind. 542, 561, 111 N. E. 914; that the same was thus ended, and that by the "possibility of

reverter," of which appellant was the grantee, she then became vested with title to the strip of ground.   13 C. J. 1017; *Fall Creek School Township* v. *Shuman* (1913), 55 Ind. App. 232, 103 N. E. 677.

On September 1, 1923, the board of park commissioners adopted a resolution seeking to retake and reappropriate for park purposes this strip of ground, and, upon the hearing, appellant appeared and remonstrated in writing against such taking.   The board ratified the resolution and appointed appraisers who in due time filed their report.

Appellant's complaint, in two paragraphs, alleged, in part, that the avowed purpose of the board's resolution was to compel and force appellant to grant to a private owner of property which abuts said strip on the east a wider right of way from said property to the Pleasant Run Parkway and boulevard.   Appellant also alleged that should the strip be taken, she "will be deprived of her property for private and not for public use and benefit . . . and without due process of law."   The issues were joined by general denials.

The cause was tried by the court, and, at the conclusion of appellant's evidence, the appellees moved for a judgment in their favor, and stood upon their motion. The court found for the appellees and rendered judgment in their favor.   Appellant assigns as error the overruling of her motion for a new trial.   Among the reasons therein set out are the following:   that the decision of the court is not sustained by sufficient evidence, that it is contrary to law and that the court erred in sustaining appellee's motion for judgment in their favor and for dissolution of a temporary injunction, which had been issued.

It appeared in evidence that lot 9, appellant's lot, and lot 11, the lot immediately east thereof, owned by a Mrs. Miller, both abut on the south on Audubon drive, and that appellant's lot abuts on Pleasant Run Park-

way, as did also Lot 11, before the triangular strip was abandoned by the city. That the city owns ground 9.67 feet in width between the abutment of the bridge over Pleasant Run and appellant's iron fence, and owns no land on the south or west sides of Pleasant Run, to which it needed a means of access. That the city engineer in the office of the park board demanded of appellant, through her husband, "are you going to give that right of way over that property to Miller?" and that, upon refusal, he said, "If you don't, the board will rescind their resolution," went to the telephone, called up the president of the park board and said, "Kessler won't give that right of way to Miller."

At the hearing on the remonstrance, the president of the board, the late Charles A. Bookwalter, stated, that "the purpose of the resolution was to do justice . . . . that all they wanted was to give a right of way to the Miller lot." Mr. Bookwalter, testifying as to what transpired at the meeting said: "I said it seemed to me as though this was a matter that ought to be easily settled, as between the parties. They were the most interested. They were the people who had to live there with one another, and I have always found that a peaceful relationship is much more pleasant than otherwise. And I said that such an action as this would give this man an opportunity to get out on the boulevard and just give him an easement in that way . . . Mr. Cline or Mr. McGuire (other members of the board) said, 'He already has easement on Audubon Road' and I said, Yes but doesn't he have a right to come out on the boulevard. . . . I said I would see Kessler at the Columbia Club and would not have any trouble in getting an easement. I saw Kessler but did not get the easement."

Mr. Bookwalter, in answer to a question asking if the purpose of resolution 21 was to provide an easement

over the triangular strip of ground, said: "Yes, in that the equity demanded and gave to Mr. Miller that right. No, in that the (city) engineer had been insistent then and before that he would need the ground in extending Pleasant Run Boulevard around the east shank of Pleasant Run. That was the argument made by Mr. Elliott (city engineer) and Mr. Miller (husband of owner of Lot 11) from the start, that the city ought not to do it (abandon the strip) and the board acted contrary to his advice."

Mr. Bookwalter testified that the board had overruled the objections of the city engineer, that he felt the engineer's objections might be based on a feeling of unfriendliness toward Mr. Kessler, as he knew they had had some unpleasant dealings, and that the purpose of retaking it was both for the purpose of providing an easement for the owner of lot 11 and providing a possible future access to land lying on the south side of Pleasant Run in future contemplated park and boulevard development. That the cause of this decision to reverse the action of the board and to acquire the property was: "the continued insistence on the part of the engineer that the board had made a very serious mistake, and because of a feeling on my part, . . . in ideals of equity, that the intention of the board is never to interfere with the rights of any property owner and the feeling that the owner of Lot 11, at least, had the right, in all fairness, to get out on the boulevard."

Appellee's city attorney contends that the authority of the courts is limited to a consideration of whether the "use," for which the property is taken, is or is not a "public use," that resolution No. 21 stated on its face that the strip of ground was to be acquired by the board of park commissioners for "park purposes," and that the court may not "inquire into and go behind resolution No. 21" to consider the question of whether

the strip was to be acquired for the purpose of providing a right of way to the new boulevard for the owner of an adjoining lot.

We believe that the inquiry of the courts is not limited alone to a consideration of whether the "use"—"park purposes"—which a city assigns in its condemnation proceedings as the use to be made of the property, is or is not a public use, (if that were true there would really be no limitation on the power of cities to acquire property), but that a consideration may be had of all the surrounding facts and circumstances tending to show what is the actual, principal and real use to be made of the property.

Appellee contends that an examination into the "actual purpose" is in fact an inquiry into the "motives" of the board and that the motives inducing public officers to do a thing which they have a right to do are not, under a number of Indiana authorities, open to judicial inquiry. If it had been sought to take appellant's property for park purposes exclusively, she would not be permitted to inquire into the motives which caused the officers to take it. In this case, however, the inquiry does not relate to the motives which caused the municipal officers to act, but to the purpose of the taking. While the words motive and purpose are sometimes used as synonymous terms, yet in their application here, there is a clear distinction between them. "Motive" is that which prompts the choice or moves the will, thereby inciting or inducing action, while "purpose" is that which one sets before himself as the end, aim, effect or result to be kept in view or object to be attained. The purpose for which private property is condemned is the very basis of the right to condemn. In *Ligare* v. *City of Chicago* (1891), 139 Ill. 46, 28 N. E. 934, 32 Am. St. 179, it was said:

"We do not deny that the city has power to widen streets, generally, and that when it has undertaken to do so the motives that may have actuated those in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is, in the present instance, a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is in all cases limited by the *purpose* for which it shall be exercised,—as thus, private property may be condemned for public uses, but it may be shown that the use in fact is not public, but private."

The power of eminent domain may be exercised only for public purposes and not for a private purpose and the taking of private property for a private use 4-6. violates the constitutional rights of the owner. *Fountain Park Co.* v. *Hensler* (1927), *ante* 95, 155 N. E. 465. The power of eminent domain cannot constitutionally be delegated for an essentially private purpose, even though a public purpose will be incidentally served thereby. 20 C. J. 556, note 66. On the other hand, a use which is in itself of a public character, justifying the exercise of the power of eminent domain, does not lose its character as such by the fact that the exercise of the power for such use will *incidentally* result in a private use or benefit. *Wisconsin River Improvement Co.* v. *Pier* (1908), 137 Wis. 325, 118 N. W. 857, 21 L. R. A. (N. S.) 538; 20 C. J. 556, note 67.

Where, however, the intention to confer a private use or benefit forms *the purpose, or a part of the purpose,* of the proceeding or taking, the power of eminent 7-9. domain may not be exercised. *Harding* v. *Goodlet* (1832), 3 Yerg. (Tenn.) 40, 24 Am. Dec. 546; *Columbus Water Works Co.* v. *Long* (1898), 121 Ala. 245, 25 So. 702; *State* v. *Superior Court* (1906),

42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672, 7 Ann. Cas. 748; *Gaylord* v. *Chicago Sanitary District* (1903), 204 Ill. 576, 68 N. E. 522; *Chicago, etc., R. Co.* v. *Galt* (1890), 133 Ill. 657, 23 N. E. 425; *Minnesota Canal & Power Co.* v. *Koochiching Co.* (1906), 97 Minn. 429, 107 N. W. 405, 5 L. R. A. (N. S.) 638. It is only where the public and private purposes may be separated (and they cannot be separated in the case at bar) that the proceeding may be permitted to be taken as to that part which is public in character. *Miller* v. *Pulaski* (1909), 109 Va. 137, 63 S. E. 880; *State, ex rel.,* v. *Centralia, etc., Co.* (1906), 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 672, 7 Ann. Cas. 748; *Tacoma* v. *Nisqually Power Co.* (1910), 57 Wash. 420, 107 Pac. 199. It appears from our review of the principal testimony that there was evidence tending to show that the strip of ground was desired (though possibly not immediately needed) by the city for a use that was unquestionably a public use, but such testimony also shows that it was desired by the board of park commissioners to take the property for the private use of the owner of lot 11.

Specifications of error in the motion for a new trial, as hereinbefore noted, included the sustaining of appellees' motion for judgment at the conclusion of plaintiff's evidence. The briefs of both parties state that the court sustained this motion. The record shows that "said cause is submitted on said motion of defendants," but shows no express ruling upon the motion other than the following at the conclusion of a written opinion which the lower court at the time of announcing and rendering its judgment handed down and announced in open court: " . . . taking all matters into consideration the court finds for the defendant, dissolves the temporary injunction and adjudges that plaintiff take nothing in this action."

Our conclusion is that the judgment must be reversed

and this conclusion is reached regardless of what the ruling of the court on appellees' motion was.

If it is assumed that court did not rule on appellees' motion or overruled it and that the judgment was rendered upon the submission of the cause on all the evidence, then, it is our opinion, considering the matter under the specification of error that the judgment is not sustained by sufficient evidence, that the uncontradicted evidence showed that the intent to take for a private purpose formed at least a part of the purpose of the taking and under the rule laid down by the authorities hereinbefore cited such a taking is not authorized.

If, however, it is assumed that the ruling of the court sustained appellees' motion for judgment at the close of appellant's evidence, then it is our opinion, considering the matter under the specification that the court erred in sustaining the motion, that such motion was in the nature of a demurrer to the evidence and that the court in considering it should have considered only the evidence tending to sustain the complaint; *Curryer* v. *Oliver* (1901), 27 Ind. App. 424, 60 N. E. 364, 61 N. E. 593; *Bilskie* v. *Bilskie* (1919), 69 Ind. App. 595, 122 N. E. 436; such a motion admitting, for the purpose of its determination, that the facts shown in evidence are true. *Milburn* v. *Phillips* (1893), 136 Ind. 680, 34 N. E. 983, 36 N. E. 360; *Chicago, etc. R. Co.* v. *Williams* (1892), 131 Ind. 30, 30 N. E. 696. The evidence most favorable to appellant tended strongly and reasonably to show that the real purpose of the board's resolution was to take appellant's land for a private purpose.

While the appellees may have introduced additional and different evidence, if they had not elected to stand on their motion for judgment at the conclusion of appellant's evidence or to rest their case, the president of the park board testified, in both his

direct and cross examinations, that the public use for which the land was sought was to "provide a possible future access" to land on the south of Pleasant Run, of which it does not appear that the city is now the owner. If the public use is contingent and prospective and the private use or benefit is actual and present, the public use would be incidental to the private use, and in such a case, the power of eminent domain clearly could not lawfully be exercised. *Thom* v. *Georgia Mfg., etc., Co.* (1907), 128 Ga. 187, 57 S. E. 75; *Lorenz* v. *Jacob* (1883), 63 Cal. 73; *In re Eureka, etc., Co.* (1884), 96 N. Y. 42.

The prayer of the complaint was for a temporary restraining order, without notice, a temporary injunction after notice and hearing, and that, upon the final hearing, the appellees "be permanently and perpetually enjoined from proceeding further and from doing any act or thing whatever having for its purpose, directly or indirectly, the taking and acquiring of plaintiff's land." Such a judgment would be manifestly improper even if appellant prevails upon a retrial of the case. A permanent injunction could not be entered which would forever prevent the appellee city from bringing subsequent proceedings in case the strip of ground was at any later time needed for park purposes. The injunction here sought was against the specific proceedings taken by the city in the park board resolution No. 21, and if the injunction was granted, it would necessarily be limited to proceedings under that resolution. This court does not undertake to say that conditions may not arise under which said strip might be taken, such as the acquisition of other additional land in the vicinity of the bridge, the widening of the boulevard, changes in the bridge or its abutments, etc., or, for that matter, we do not hold that conditions do not now exist under which the city might properly take the prop-

erty under the power of eminent domain, but our decision is that, in this case of resolution No. 21, the evidence introduced by appellant was sufficient to withstand appellees' motion for judgment at the conclusion of the appellant's evidence and is not sufficient to sustain the judgment of the court.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial and further proceedings not inconsistent herewith.